STATE of Missouri, Respondent,

v.

Stanley CARTER, Appellant.

No. SC 93333.

Supreme Court of Missouri,
En Banc.

Dec. 10, 2013.

Jessica Hathaway, Public Defender's Office, St. Louis, for Carter.

Shaun Mackelprang and Mary H. Moore, Attorney General's Office, Jefferson City, for the State.

MARY R. RUSSELL, Chief Justice.

Stanley Carter appeals his convictions for first-degree assault and armed criminal action. He alleges that the trial court erred in overruling his *Batson*[1] challenges to three of the prosecutor's peremptory strikes, and failed to *sua sponte* admonish the prosecutor or declare a mistrial for alleged prejudicial statements he made during closing arguments. After an opinion by the Court of Appeals, this Court granted transfer pursuant to Mo. Const. art. V, § 10.

This Court holds that Carter did not meet his burden in demonstrating that the prosecutor's strikes violated his equal protection rights and right to a fair trial pursuant to *Batson*. Further, although Carter did not object to the prosecutor's rebuttal closing argument, plain error review reveals that the trial court did not err in failing to admonish the prosecutor *sua sponte* or declare a mistrial during closing rebuttal. The trial court's judgment is affirmed.

## I. Factual Background

Stanley Carter was convicted by a jury of first-degree assault and armed criminal action in connection with a shooting of the manager of a car wash. According to the manager, he briefly opened the car wash door because a man he recognized as an acquaintance of his employer's nephew knocked. When Carter brandished a gun, the manager closed the door, but Carter shot through the door, striking the manager. Carter appeals his conviction.

### A. Voir Dire

At the outset of jury selection, the venire panel included 15 African American venirepersons, four of whom the prosecutor struck for cause. He used five of the six peremptory challenges to strike other African American venirepersons, ultimately leaving one African American juror. While Carter challenged five of the peremptory strikes during voir dire, he currently only argues the strikes against K.M., D.W. and J.J. were based on race.

As the area surrounding the car wash was considered a "known area of violence," Carter's counsel asked venire members if they were familiar with the area and whether anything about the area would cause them to be biased. Six members of the venire, all of whom were African American, stated that they were familiar with the area.

K.M. responded that he was "very familiar" with the area and noted that shootings were particularly common there. He stated that he was told not to go into the area "because people are shooting so frequently." While he said that he would listen to both sides, he also stated that he had "a frame of reference for that area, and . . . [an] opinion of what the area is like. What type of mindset is there." Although he acknowledged that he had some sympathy for victims because his cousin had been a victim of a crime, he also thought "anybody would make themselves to be a victim, depending on how the story is told." D.W. responded that he knew the area "kind of well" but could be impartial. J.J. stated that she had family members in the area and might move there. She answered "uh-huh" when asked if she was in tune with the community.

Of the six venire members who stated they were familiar with the area, the pros-

**1.** *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

ecutor struck one person for cause because she was sleeping during voir dire. He used two peremptory strikes against venire members who stated they would require more than one witness from the State but struck K.M., D.W., and J.J. peremptorily solely because they were familiar with the area.

In response to the peremptory strikes, Carter's counsel made a *Batson* challenge, arguing that there was no race-neutral reason for the strikes. The prosecutor explained that he struck K.M. because K.M. was familiar with the area in which the crime occurred, and was concerned that K.M. thought that "the area is so dangerous, that he will hold that against the victim in this case." Carter's counsel countered that the prosecutor's reasoning was pretexual because K.M. also stated that he was sympathetic toward victims. The trial court found that the proffered reason was not pretextual or racially motivated and allowed the strike to stand.

The prosecutor then explained that he struck D.W. because D.W. was familiar with the area and that "every person [who was] familiar with the area, a known area of violence ... has been struck for cause or peremptorily." Carter's counsel responded that no other individuals were struck because of the familiarity with the area and that knowledge of violence in the area near the crime did not amount to a reason to strike the venirepersons. In response, the prosecutor detailed each person who stated he or she was familiar with the area and demonstrated that they were struck for either cause or peremptorily. Carter's counsel responded by saying, "the record speaks." The trial court again found that the prosecutor's explanation was not pretextual and allowed the strike.

In the discussion regarding J.J., the prosecutor reiterated that he struck everyone who said they were familiar with the area, and Carter's counsel repeated that he found that theory pretextual, but did not offer more. The court again allowed the strike.

### B. Closing Argument

During closing arguments, defense counsel argued that both the police and the victim misidentified Carter. He pointed to discrepancies between eye-witness accounts of the crime and the fact that the police did not test any of the bloodstained clothes from the crime scene. He suggested that the police were more concerned with learning information about other people in the area than learning about the shooting. He also argued that the victim's identification was unreliable given the short amount of time he viewed the shooter.

In the closing rebuttal, the prosecutor responded to the defense's arguments by saying:

> That's it, ladies and gentlemen. I heard the standard package defense argument for every case that I've done. Okay. Cops incompetent. Don't do a good job. Victim must be lying. That's it. Sometimes they pick one, sometimes they go with both.

Carter's counsel did not object to these statements at trial.

### II. *Batson* Challenge

The Equal Protection Clause prevents parties from using peremptory challenges to strike potential jurors on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *State v. Marlowe*, 89 S.W.3d 464, 468 (Mo. banc 2002). *State v. Parker* established a three-step inquiry to evaluate a defendant's *Batson* challenges. First, the defendant must identify specific members of the venire the State struck and the racial group to which they belong. *State*

*v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992). The state then has the opportunity to offer a reasonably specific and clear race-neutral explanation for the strike. *Id.* At this stage, the proffered explanation will be deemed race-neutral if it is not inherently discriminatory, even if it has a disparate impact on venirepersons of a particular racial group. *Marlowe,* 89 S.W.3d at 468–69 (citing *Parker,* 836 S.W.2d at 934).

The burden then shifts to the defendant to show that the state's race-neutral explanation was merely pretextual and that the strikes were racially motivated. *Id.* In evaluating whether an explanation was pretextual, courts must consider a variety of factors as "[t]here is rarely a simple litmus test." *State v. Bateman,* 318 S.W.3d 681, 690 (Mo. banc 2010). The chief concern is whether the explanation is plausible in light of the totality of the facts and circumstances of the given case. *Parker,* 836 S.W.2d at 939. To determine whether the explanation is plausible, courts consider whether the state's explanation is race-neutral, related to the case to be tried, clear and reasonably specific, and legitimate. *State v. McFadden,* 216 S.W.3d 673, 676 (Mo. banc 2007). In determining whether the proffered explanation is logically related to the case being tried, the court can consider the crime charged and the evidence to be introduced at trial. *Bateman,* 318 S.W.3d at 691.

The trial court's ruling concerning a *Batson* challenge receives considerable deference from reviewing courts because it is largely based on an analysis of the prosecutor's credibility and demeanor. *Id.* at 687. As such, the trial court's decision will only be overturned if it is clearly erroneous and the reviewing court is left with a definite and firm conviction that the trial court made a mistake. *State v. McFadden,* 191 S.W.3d 648, 651 (Mo. banc

2006). This Court has no such conviction in this case.

Carter acknowledges that familiarity with the area near a crime is a race-neutral explanation. *See State v. Nylon,* 311 S.W.3d 869, 883 (Mo.App.2010) (finding the state's explanation was not pretextual when it struck venirepersons who lived in the area where the crime occurred); *see also State v. Williams,* 956 S.W.2d 942, 947 (Mo.App.1997) (being familiar with the store where the crime happened and the store next door was not pretextual). The only remaining issue is whether the proffered reason was pretextual.

To demonstrate pretext, Carter argues that the racial composition of the area near the crime is predominantly African American, so familiarity with the area tended to apply particularly to African Americans. But this argument fails for two reasons. First, it was not raised before the trial court, and reviewing courts generally will not consider arguments not presented to the trial court. *See State v. Davis,* 348 S.W.3d 768, 770 (Mo. banc 2011). Second, even if the argument had been properly raised, being familiar with an area, regardless of the area's racial composition, is not necessarily a race-based motivation. While here everyone who expressed familiarity with the area was African American, anyone, regardless of race, can be familiar with a particular area of a city.

Carter further contends that the prosecutor's reasoning had a tendency to apply to African American venire members. Again, this argument was not raised at trial. But even if it had been raised, "disparate impact alone does not convert a facially race-neutral explanation into a per se violation of equal protection." *State v. Brooks,* 960 S.W.2d 479, 488 (Mo. banc

1997) (citing *Parker*, 836 S.W.2d at 934); *see Hernandez v. New York*, 500 U.S. 352, 363, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (noting that in the pretext analysis, a court may consider whether a proffered explanation has a disparate impact but finding that foreign language ability was not pretextual). It is important to consider whether an explanation has a disparate impact on one racial group, but this is not the only factor that should be considered. *Brooks*, 960 S.W.2d at 488. Rather, Carter must show, based on the totality of the circumstances, that the prosecutor was racially motivated in striking these three venirepersons. *Parker*, 836 S.W.2d at 939. He has not met this burden.

When explaining the reason he struck all potential jurors who were familiar with the area, the prosecutor stated he was concerned such jurors knew that "the area is so dangerous, that [they] will hold that against the victim in this case." While Carter now argues that the location of the shooting is not logically related to the underlying case, he was the one who initially asked about familiarity with the area during voir dire. By opening the door and raising the issue himself with potential jurors, Carter acknowledged that the character of the area near the crime was relevant to the case. He cannot complain now that the prosecutor also believed the area near the crime was relevant to the case.

Looking to the individual venirepersons at issue, the prosecutor's concerns appear plausible. *Parker*, 836 S.W.2d at 939. K.M. stated that he was told not to visit the area because there were shootings so often. While he noted he had some sympathy for victims, he also stated that he

would not be partial to the victim, nor would his sympathy affect his decision making because "anyone would make themselves to be a victim, depending on how the story is told in certain cases." Additionally, he stated that he had a "frame of reference for that area, and ... [a] particular opinion of what the area is like. What type of mindset is there." Carter argues that K.M.'s sympathy for victims demonstrates pretext because he should have been a strong juror for the state. However, all of K.M.'s statements indicate that his sympathy for victims was *very* limited. Additionally, based on K.M.'s statements regarding his opinions of the area, the prosecutor's concern that K.M. would hold the general reputation of the area against the victim is plausible.

D.W. and J.J.[2] also indicated they were familiar with the area. J.J. indicated that she might move to the area and answered "uh-huh" when defense counsel asked whether she was "in tune with the area ... the social upbeat in the community." D.W. stated that he was familiar with the area. While these statements are not as telling as K.M.'s statements, it was not clear error for the trial court to conclude that the prosecutor's consistent use of this reasoning to strike all persons who were familiar with the area was not pretextual.

Looking at the totality of the factors, Carter has not shown that the articulated reasoning for the strikes was pretextual. The prosecutor indicated that the state was concerned that the potential jurors who were familiar with this particular area would be unsympathetic toward the victim, and Carter has failed to show that this was a race-based motive. The trial court did

---

**2.** J.J. was a potential alternate juror, and the alternate juror did not participate in deliberations in this case. The state argues that any error in striking J.J. is immaterial, relying on *State v. Carter*, 889 S.W.2d 106, 109 (Mo.App.

1994) ("*Batson* does not stand for the proposition there is a Constitutional right to be an alternate juror."). Because this Court finds that the strike of J.J. was not based on race, it need not address this argument.

not clearly err in overruling the *Batson* challenges.

### III. Closing Argument

█ Carter argues that the trial court erred in failing to *sua sponte* admonish the prosecutor or declare a mistrial during the prosecutor's closing rebuttal argument. Carter did not object to the statements at trial and, therefore, did not preserve the issue for review. When a party does not properly preserve an argument at trial, the Court may, in its discretion, review the argument for plain error when there is a manifest injustice or miscarriage of justice. *State v. Tisius,* 92 S.W.3d 751, 767 (Mo. banc 2002); Rule 30.20. To prevail under the plain error standard, the defendant must show that the statements during closing argument had a decisive effect on the jury. *State v. Edwards,* 116 S.W.3d 511, 537 (Mo. banc 2003).

█ Reviewing courts will rarely find plain error in closing remarks when the challenging party did not object at trial because any action on the part of the court would be uninvited. *State v. Perry,* 275 S.W.3d 237, 245 (Mo. banc 2009); *see State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995) (declining plain error review of prosecutor statements in closing argument because relief is rarely granted in such situations). The defendant's failure to object to an improper argument is often strategic, and uninvited intervention may emphasize the matter in a way the defendant chose not to. *Perry,* 275 S.W.3d at 245.

█ In this case, the prosecutor argued in rebuttal closing argument that he had "heard the standard package defense argument" that the cops are "incompetent" and that the victim "must be lying." He further stated that "[s]ometimes they pick one, sometimes they go with both." These statements were a response to defense counsel's argument that both the victim

and police misidentified Carter. Prosecutors have considerable leeway to make retaliatory arguments at closing and may rebut any issue raised by the defense. *State v. Sanchez,* 186 S.W.3d 260, 265 (Mo. banc 2006). Here, the prosecutor's closing rebuttal was not improper because it responded to arguments made by defense counsel. Because the prosecutor's closing argument was not improper, and there was no manifest injustice or miscarriage of justice, it was not plain error for the trial court to refrain from interfering.

### IV. Conclusion

For the foregoing reasons, the trial court's judgment is affirmed.

BRECKENRIDGE, FISCHER and WILSON, JJ., concur.

DRAPER, J., concurs in separate opinion filed; STITH and TEITELMAN, JJ., concur in opinion of DRAPER, J.

GEORGE W. DRAPER III, Judge.

I concur in the principal opinion. Yet, I choose to write separately to discuss the implications of a pretextual explanation during a *Batson* challenge. I agree there was an insufficient record from which the trial court could have sustained Carter's *Batson* challenge for pretext. However, had Carter placed some sort of explanation on the record regarding how the State's proffered pretextual reasons for its strikes were discriminatory, there would have been enough to sustain his *Batson* challenge.

In making his *Batson* challenge, Carter first identified the specific members of the venire panel struck by the State. The State then proffered its race-neutral reason for striking those venirepersons, claiming they were familiar with the area of the crime. At this stage, any plausible expla-

nation will be deemed race-neutral, even if there is a disparate impact on venirepersons of a particular racial group. *State v. Marlowe*, 89 S.W.3d 464, 468–69 (Mo. banc 2002) (citing *State v. Parker*, 836 S.W.2d 930, 934 (Mo. banc 1992)).

Once the State offered its facially race-neutral reasons, it was incumbent upon Carter to demonstrate the State's explanation was pretextual. This third step of the *Batson* analysis allows a party to demonstrate why the asserted race-neutral reason conceals invasive discrimination. *State v. Letica*, 356 S.W.3d 157, 165 (Mo. banc 2011). Courts may consider a non-exclusive list of factors that demonstrate pretext. *State v. Bateman*, 318 S.W.3d 681, 690–91 (Mo. banc 2010). "Objective factors bearing on the state's motive to discriminate on the basis of race, such as the conditions prevailing in the community and the race of the defendant, the victim, and the material witnesses, are also worthy of consideration." *Id.* at 691.

Carter failed to offer any additional reason explaining how mere familiarity with an area would be a pretext for discrimination nor did he present the census data that he later presented to the appellate court. Carter merely stated that "the record speaks." The implication of Carter's statements indicated that his pretext claim was that a venireperson's familiarity with the area was a proxy for being African–American; yet, that argument was not articulated.

In this case, the area in question, Fairgrounds Park in north St. Louis City, is almost an exclusively African–American neighborhood. It is implausible to believe that a St. Louis City assistant circuit attorney and a St. Louis City trial judge were unaware of this historic neighborhood and its racial demographic. Carter did not explain this or make any sort of argument to the trial court for its consideration.

Carter failed to comply fully with the three-step analysis of *Batson*, which is designed to prevent discrimination masquerading as a race-neutral rationale. Since Carter failed to challenge the State's explanation in the trial court as pretextual, he may not challenge the State's explanation on appeal. *See State v. Moore*, 88 S.W.3d 31, 35 (Mo.App.E.D.2002); *State v. Aziz*, 861 S.W.2d 803, 806 (Mo.App.E.D. 1993). Accordingly, I must concur with the principal opinion.