

# Missouri Court of Appeals

### Southern District

### Division Two

STATE OF MISSOURI,                )
                                  )
    Plaintiff-Respondent,      )
                                  )
vs.                               )    No. SD33305
                                  )
WILLIAM J. KEARNES,               )    **Filed:  April 7, 2015**
                                  )
    Defendant-Appellant.       )

### APPEAL FROM THE CIRCUIT COURT OF DOUGLAS COUNTY

Honorable R. Craig Carter, Circuit Judge

## <u>AFFIRMED</u>

A jury found William J. Kearnes ("Defendant") guilty of stealing a tractor and brush hog, and the trial court sentenced him as a prior offender to ten years in the Missouri Department of Corrections.  Defendant appeals and raises three points – (1) the trial court "plainly erred in not declaring a mistrial *sua sponte*" when the prosecutor, without objection, "misstate[d the] law" in closing argument, (2) the trial court "plainly erred in overruling [Defendant's] objection" to a statement and implication by the prosecutor during closing argument that was "not based on any evidence," and (3) the trial court "abused its discretion" in excluding "a missing person report" from evidence.  We affirm the trial court's judgment because Defendant fails to persuade us that either of

1

the claimed plain errors in closing argument had a decisive effect on the outcome of the trial, and the exclusion of the missing person report from evidence was not an abuse of discretion as the report was cumulative to significant other evidence.

## Facts and Procedural History

Defendant was charged as a prior offender with stealing, on August 4, 2011, a tractor and brush hog that had a value of at least $25,000.

Inasmuch as Defendant does not challenge the sufficiency of the evidence, we limit our summary of the evidence at trial to that evidence necessary for us to review the points raised by Defendant. In summarizing the evidence, we view the evidence in the light most favorable to the jury's verdict – drawing all reasonable inferences favorable to the jury's verdict and rejecting all evidence and inferences contrary to the jury's verdict. *State v. Hart*, 404 S.W.3d 232, 235 (Mo. banc 2013); *State v. Salazar*, 414 S.W.3d 606, 610 n.2 (Mo.App. S.D. 2013), *cert. denied*, 134 S.Ct.2875 (2014); and *State v. Vorhees*, 342 S.W.3d 446, 448 (Mo.App. S.D. 2011).

Donald ("Archie") Earl Ladd owned a tractor with an attached front-end loader with a hay spike and a "fold-up brush hog." The tractor, loader and brush hog were appraised after August 4, 2011, for more than $50,000. A tractor and attachments can be sold without a title. The tractor and attachments were located behind locked gates on August 4, 2011, near a "waterer" that pumped fresh water that was safe to drink.[1] After lunch at Mr. Ladd's home on August 4, 2011, Mr. Ladd and a worker, Pat Moore, started back toward where the tractor and attachments were located. Mr. Ladd and Mr. Moore were traveling in separate vehicles with Mr. Ladd in front and Mr. Moore behind. In the

---

[1] On August 3, 2011, Mr. Ladd had talked to and observed law officers looking for a person and also observed a helicopter searching for a person.

course of the trip, Mr. Ladd encountered Defendant driving Mr. Ladd's tractor and attachments toward Mr. Ladd. Mr. Ladd had not given Defendant permission to operate the tractor. Mr. Ladd used his vehicle to block the road, exited his vehicle with a loaded .38 caliber revolver, and ordered Defendant to exit the tractor and lie on the gravel. Defendant complied, and did not seem disoriented to Mr. Ladd. Mr. Ladd then contacted law enforcement, and officers responded to the scene.

While driving Mr. Ladd's tractor, Defendant had passed a wedding chapel and two occupied houses and drove the tractor over three miles before Defendant encountered Mr. Ladd. To get out of the locked enclosure in which the tractor was located, Mr. Ladd believed that Defendant used the front-end loader to lift the locked gates up and pull them out of the way, and, in the process, ran over one of the gates. In addition, the tractor had been left in a "transmission range" for use in the field, but was in a "transmission range" for use on the highway when Mr. Ladd encountered Defendant driving the tractor. In order to shift the tractor from field range to highway range, the operator was required to place the transmission and shuttle in neutral and then push a button.

Other evidence at trial included the testimony of several witnesses. Retired Missouri State Highway Patrol Sergeant Keith Jones testified that officers from Christian and Douglas Counties conducted a search on August 3, 2011, in the area where Defendant was found on August 4, 2011. When Sergeant Jones arrived at the scene where Defendant was present on August 4, 2011, Douglas County Sheriff Chris Degase and Douglas County Deputy Sheriff Vernon Johnson were present. Defendant was "drinking a bottle of water." Sergeant Jones described Defendant's condition "as pretty much emaciated. He was dehydrated. He had cuts, scratches, and bruises all over his

body. He was dirty. His hair was matted with leaves and burrs and dirt . . . ." Sergeant Jones added that "[i]t looked like . . . [Defendant] had ran through or been drug through a briar patch." Defendant's only clothing was "a pair of shorts." A gate at the farm of the owner of the tractor and brush hog "looked like someone had just ran through the gate with -- with something -- a car, a piece of equipment." Sergeant Jones did not "smell[] any intoxicants on [Defendant]," and opined that Defendant "had been impaired or was impaired at the time" by drugs though he would have been unable "to tell the difference" between impairment by drugs and disorientation from being lost and without food for days because no tests were conducted. Swan Creek, with fresh water, was "not too far" from where Defendant was encountered. Defendant was transported by ambulance to a hospital "for medical attention."

Pat Moore, who worked for Mr. Ladd, testified that it appeared Defendant had used the loader on the tractor to lift the locked gates and move them to one side so Defendant "could get out." It also appeared Defendant drove over a part of the locked gates. Mr. Moore had not "seen anybody out there asking for help" in the days before August 4, 2011.

Defendant did not testify, but called his mother, Katherine Kearnes, and Douglas County Sheriff Chris Degase as witnesses. In response to Mr. Ladd's request for law enforcement assistance, Sheriff Degase went to the location where Mr. Ladd was holding Defendant. Deputy Sheriff Johnson arrived "right behind [Sheriff Degase]" followed by Sergeant Jones. Defendant "had a lot of scratches," including on his feet, and was "galded" on his buttocks and "somewhat incoherent." Defendant was in "sad shape." Defendant was dehydrated, and was sent to the hospital. Sheriff Degase "knew

4

[Defendant] had been in the woods for a couple, three days at least. I believe that August 2nd, his wife was picked up in that area." A report Defendant was missing was filed on August 3 by either Defendant's wife or mother, and law enforcement searched the area for Defendant on August 3. The search included the use of a helicopter and plane. On cross examination, Sheriff Degase stated, "I don't know whether [Defendant] was [intoxicated] at that time. Later on in the interview, he indicated to me that he and his wife felt that they had gotten some bad dope."

Ms. Kearnes reported to "authorities" Defendant was missing when Defendant's wife was found a "day or two before [Defendant] was found." The authorities included the Taney County Sheriff's office. Defense counsel requested to "enter . . . into the record" the written report Ms. Kearnes made to the Taney County Sheriff's office, and the prosecutor objected based on a lack of relevance. Defense counsel replied the report "indicates how long [Defendant] was gone, how long he very possibly was in the woods. . . ." The trial court sustained the prosecutor's objection and excluded the report from evidence. Almost immediately after the trial court's ruling, Ms. Kearnes testified that "it was, like, five and a half days he was missing totally."

Defendant and his wife were living with Ms. Kearnes at the time. Defendant and his wife did not take any "camping stuff" or anything else with them when they left Ms. Kearnes' home. Defendant was at the hospital when Ms. Kearnes first saw him after he was found driving Mr. Ladd's tractor. Defendant "was very skinny" and "pathetic looking" – "he just looked withered." Ms. Kearnes took pictures of some of Defendant's sores and abrasions at the hospital, and those pictures were shown to the jury. When Defendant's wife was found, she was "naked from the waist down." A drug test was

5

performed on her and Ms. Kearnes "assumed" she was "using methamphetamines." The only clothing Defendant's wife had on when she was found was a "shirt," and the only clothing Defendant had on when he was found was "shorts." Ms. Kearnes was aware the search for Defendant included a helicopter. On cross examination, the trial court prohibited the prosecutor from asking Ms. Kearnes for a "medical opinion" on the cause of Defendant's sores.[2]

> During voir dire, the trial court informed the venire panel:

> It is your duty to follow the law as the Court gives it to you in the instructions even though you may disagree with it. Are there any of you who would not be willing to follow all the instructions which the Court will give to the jury? If so, please raise your hand at this time. Again, the Court sees no hands.

Defense counsel asked the venire panel, "[w]ould anyone have a problem keeping their -- keeping an open mind as to intent, because that's really what this case is going to turn on today."

In his opening statement, the prosecutor told the jury that, after it heard all the evidence, it would determine Defendant "didn't intend to return [the tractor]." Defense counsel told the jury in her opening statement that Defendant admits he "took" the tractor, but "[h]e didn't take it to keep it for himself" – "[h]e took it as a means to an end. He took it so he could get to somewhere where he could get the help that he needed." A short time later in her opening statement, defense counsel repeated "[h]e did not take [the tractor] to keep it. He took it to save his life."

---

[2] Contrary to Defendant's assertion in his brief that the trial court "never instructed [the jury] to disregard" the prosecutor's question, jury instruction 2 specifically instructed the jury "[y]ou must not assume as true any fact solely because it is included in or suggested by a question asked a witness. A question is not evidence, and may be considered only as it supplies meaning to the answer."

6

The trial court instructed the jury that in order to find Defendant guilty, the jury must "find and believe from the evidence beyond a reasonable doubt" that Defendant "took" the tractor and brush hog "for the purpose of withholding from the owner permanently or using or disposing of it in such a way that made recovery by the owner unlikely" among other elements. Defense counsel submitted a converse instruction that also was given to the jury and stated:

> Unless you find and believe from the evidence beyond a reasonable doubt that the defendant took the tractor for the purpose of withholding it from the owner permanently, or using, or disposing of it in such a way that made recovery by the owner unlikely, you must find the defendant not guilty . . . .

The jury was further instructed: (1) "[i]t is your duty to follow the law as the Court gives it to you," and (2) closing arguments:

> are intended to help you in understanding the evidence and applying the law, but they are not evidence. You will bear in mind that it is your duty to be governed in your deliberations by the evidence as you remember it, the reasonable inferences which you believe should be drawn there from, and the law as given in these instructions.

> In the first part of his closing argument, the prosecutor argued as follows:

> But do you think that tractor would've returned ever to the ownership of Mr. Ladd? I seriously doubt it. And that's what you have to decide today because they've admitted to everything else.
>     They had to. He was caught red-handed, driving the tractor down the road. So they want to say, oh, wait, he didn't mean to steal it, he was just kind of borrowing it. . . .
>     So, you know, the instruction says, did he take the tractor? Yes. Did he do it without Mr. Ladd's consent? Yes. Did it have a value of at least $25,000? Yes. And the issue is, did he withhold it from the owner permanently, or disposing of it in such a way that made recovery unlikely? That's your question as to, was he going to do that? We don't know what's in his mind. But I think you can draw commonsense notion, folk, that if you take a tractor and you drive it down the road, you're not going to bring it back that afternoon. He's not going to bring it back the next day and say, oh, here's your tractor I borrowed. . . .

. . . .

Don't tell me that the sores on his body were caused by what was happening to him out there. Something else, in my opinion, caused those sores. And I believe it's --

[Defense Counsel]: Objection, Your Honor. That's not in evidence.

[Prosecutor]: Well, I'll let the jury -- the jury can decide what the evidence shows, Your Honor.

THE COURT: Overruled.

[Prosecutor]: I don't think there's any argument about the tractor; how much it's worth. . . .

. . . .

I don't know why he didn't raise his hand; why he didn't say, here I am folks, come help me. I'm thirsty. I'm all ate up by briars, chiggers, and ticks, and whatever else. You know, it's a sad, sad, state of affairs if that's going to be the defense to crime in this country goes.

And by the way, look in your Jury Instruction No. 5, it doesn't say anywhere in there that being high or out of your mind or unconscious for some reason is a defense to this crime. If it was, I couldn't convict anybody ever in Douglas County. Just tell you that right up front.

Pass the argument.

Defense counsel in her closing argument stated:

I agree with the Prosecutor, we want you to use your commonsense. . . .

. . . .

We do know that he was dirty, that he was matted, that he found that tractor and he rode it to try to find help. . . .

. . . .

So we ask that you look at what's missing in the evidence. The Prosecution has not proved that he intended to keep that tractor, that he intended to do anything with it, but to find help. The tractor was returned. We ask that you -- unless you find and you believe the evidence beyond a reasonable doubt that the Defendant took the tractor for the purpose of keeping it, of disposing it in some way to keep it from the owner permanently, to make the recovery unlikely for the owner, you must find the Defendant not guilty. Thank you.

The prosecutor in his reply closing argument, argued the following:

8

I get the last say because the burden of proof is on the State to prove to you beyond a reasonable doubt that [Defendant] did, in fact, steal the tractor, and didn't intend to return. . . .

Yeah, you do have to make a little leap of faith. What was he going to do with the tractor? Just take it out for a joy ride to see how that -- he might like to buy one of those $52,000 tractors next week.

. . . .

It's a simple case. If you want to let the guy go and you think he's going to bring the tractor back in one piece, you're living in a different world than I live in every day. And I know that's your right to do so.

The jury found Defendant guilty of stealing, and the trial court sentenced Defendant to ten years in the Missouri Department of Corrections as a prior offender.

*Points I and II*

**Standard of Review for Claimed Plain Error in Closing Argument**

Errors not objected to at trial are limited to review only for plain error. *State v. Carter*, 415 S.W.3d 685, 691 (Mo. banc 2013); and *State v. Deck*, 303 S.W.3d 527, 541 (Mo. banc 2010). With exceptions not relevant here, errors that are objected to at trial but are not included in a motion for new trial also are limited to review only for plain error. Rule 29.11(d);[3] *State v. Miller*, 372 S.W.3d 455, 475 (Mo. banc 2012); and *State v. Vorhees*, 342 S.W.3d 446, 448 (Mo.App. S.D. 2011).

A conviction will be reversed for plain error in closing argument only when the defendant shows that the error had a "decisive effect on the outcome of the trial and amounts to manifest injustice." *Miller*, 372 S.W.3d at 475 (internal quotations and citation omitted); and *Deck*, 303 S.W.3d at 541; *see also Carter*, 415 S.W.3d at 691 (a "decisive effect on the jury"). The claimed error in closing argument must be "examined in the context of the entire record." *Deck*, 303 S.W.3d at 541, 542-43.

---

[3] All rule references are to Missouri Court Rules (2015), unless otherwise specified.

There are additional concerns where the claimed error was not objected to at trial. As our high court stated in *Carter*, 415 S.W.3d at 691:

Reviewing courts will rarely find plain error in closing remarks when the challenging party did not object at trial because any action on the part of the court would be uninvited. *State v. Perry*, 275 S.W.3d 237, 245 (Mo. banc 2009); see *State v. Silvey*, 894 S.W.2d 662, 670 (Mo. banc 1995) (declining plain error review of prosecutor statements in closing argument because relief is rarely granted in such situations). The defendant's failure to object to an improper argument is often strategic, and uninvited intervention may emphasize the matter in a way the defendant chose not to. *Perry*, 275 S.W.3d at 245.

Further, double jeopardy may bar retrial "if a judge grants a mistrial in a criminal case without the defendant's request or consent." *State v. Lovell*, 414 S.W.3d 577, 579 n.4 (Mo.App. S.D. 2013) (internal quotations and citation omitted).

**Analysis**

*Point I*

In his first point, Defendant argues that the trial court "plainly erred in not declaring a mistrial *sua sponte*" when the prosecutor, without objection, argued on a single occasion that jury instruction 5 does not "say anywhere in there that being . . . out of your mind or unconscious for some reason is a defense to this crime" because that argument "was a misstatement of the law" that had a decisive effect on the outcome of the trial where "the entire crux of [Defendant's] defense was that he was so disoriented from being lost in the woods for days that he could not have formed the intent to steal [Mr.] Ladd's tractor."

In order to find Defendant guilty, jury instruction 5 required the jury to "find and believe from the evidence beyond a reasonable doubt" that Defendant "took" Mr. Ladd's tractor and brush hog "for the purpose of withholding from the owner permanently or

10

using or disposing of it in such a way that made recovery by the owner unlikely." Defendant's argument is that the jury could have misinterpreted the prosecutor's argument to alter or negate the element that required the jury to find Defendant acted with the specified purpose. Defendant has failed to show that occurred in this case.

First, the prosecutor made the challenged statement only once in his closing arguments. Defendant had the opportunity to challenge or explain what he now says is the correct law. Second, at Defendant's request, the trial court submitted to the jury a converse instruction that emphasized the jury "must find [Defendant] not guilty" unless the jury "find[s] and believe[s] from the evidence beyond a reasonable doubt" that Defendant "took the tractor for the purpose" specified in jury instruction 5. Third, in voir dire, following the trial court's instruction that it was the venire panel's "duty to follow the law as the [trial c]ourt gives it to you in the instructions even though you may disagree with it," no venire person indicated that the venire person "would not be willing to follow all the [trial court's] instructions . . . to the jury." Fourth, immediately before closing arguments, the trial court instructed the jury it was the jury's "duty to follow the law as the [trial c]ourt gives it to you," and also that closing arguments:

> are intended to help you in understanding the evidence and applying the law, but they are not evidence. You will bear in mind that it is your duty to be governed in your deliberations by the evidence as you remember it, the reasonable inferences which you believe should be drawn there from, and the law as given in these instructions.

Fifth, in their opening statements, both the prosecutor and defense counsel framed the factual issue for the jury correctly – the prosecutor told the jury the evidence would show that Defendant "didn't intend to return [the tractor]," and defense counsel told the jury that Defendant admits he "took" the tractor, but "[h]e didn't take it to keep it for himself"

11

– rather he took the tractor to get help or save his life. And, finally, on three occasions during his closing arguments – two before and one after the challenged argument – the prosecutor properly framed the factual issue for the jury, and defense counsel also framed the factual issue properly for the jury in her closing argument.

In these circumstances (including the fact that the relief now sought was not requested by Defendant at trial) and viewed in the context of the entire record, Defendant has failed to show that the prosecutor's isolated argument had a decisive effect on the outcome of the trial. *Cf. Deck*, 303 S.W.3d at 43 (no demonstration that single misstatement of fact prejudiced the defendant); *State v. Wolf*, 326 S.W.3d 905, 907 n.2 (Mo.App. S.D. 2010) ("comments [in closing argument that] were brief, ambiguous, and not the focus of the argument" were not plain error that merited reversal). Defendant's first point is denied.

*Point II*

In his second point, Defendant asserts that the trial court "plainly erred in overruling [Defendant's] objection to the [prosecutor's] statement and implication during closing argument that sores on [Defendant's] body at the time he was arrested were not from being lost in the woods for four days but rather a result of using drugs" in that the prosecutor's statement and implication were "not based on any evidence that was admitted at trial" and had a decisive effect on the outcome of the trial. This point is subject to only plain error review because, although Defendant objected, Defendant did not include this claim in his motion for new trial.

We note when defense counsel objected, she did not request any relief. Although the trial court overruled defense counsel's objection, the prosecutor immediately

12

terminated his argument without stating the conclusion to his thought when defense counsel objected, and then shifted his argument to a different topic. Consequently, Defendant received all the relief that would normally flow from a bare objection – i.e., the termination of the opposing party's challenged argument.

In addition, there was evidence at trial that supported a reasonable inference Defendant was impaired by methamphetamine that had been improperly manufactured. Defendant's mother testified that Defendant's wife was "naked from the waist down" when she was found "a day or two before" Defendant was found, and Defendant's mother "assumed" Defendant's wife was using methamphetamine. Defendant told Sheriff Degase that "he and his wife felt that they had gotten some bad dope." Defendant was only wearing shorts when he was found, did not respond to aircraft and officers searching the area on August 3, passed up water that was safe to drink at the location where he took the tractor, and did not stop for help at a house or houses and a chapel that he passed while driving Mr. Ladd's tractor. The jury also saw pictures of Defendant's sores and abrasions.

This evidence permitted the prosecutor to draw and argue the reasonable inference that at least some of Defendant's sores were caused by Defendant's voluntary use of improperly manufactured methamphetamine. Even if that inference was not reasonable, the prosecutor's unfinished argument was merely cumulative to the evidence that Defendant had voluntarily ingested improperly manufactured methamphetamine before taking Mr. Ladd's tractor. Defendant fails to persuade us that, in the circumstances of this case, the prosecutor's unfinished argument had a decisive effect on the outcome of the trial. *See Deck*, 303 S.W.3d at 543 (no basis to conclude

13

misstatement of fact had a decisive effect on the outcome of the trial at least in part because of the cumulative nature of the misstatement). Defendant's second point is denied.

*Point III*

**Standard of Review for Point Three**

We review a trial court's decision to exclude evidence for abuse of discretion and resulting prejudice. *See State v. Wolfe*, 344 S.W.3d 822, 837 (Mo.App. S.D. 2011); *State v. Mason*, 95 S.W.3d 206, 211 (Mo.App. S.D. 2003); *State v. Barriner*, 111 S.W.3d 396, 400 n.4 (Mo. banc 2003). "A trial court abuses its discretion in excluding evidence if its decision shocks the sense of justice or indicates an absence of careful consideration." *Wolfe*, 344 S.W.3d at 837. A trial court does not abuse its discretion when it excludes evidence that is merely cumulative to other admitted evidence. *Id.*; *Mason*, 95 S.W.3d at 211.

Trial court error in excluding admissible evidence in a criminal case creates a rebuttable presumption of prejudice. *See State v. Hopper*, 315 S.W.3d 361, 367 (Mo.App. S.D. 2010); *Barriner*, 111 S.W.3d at 401. When the error was preserved, the State must show the error was harmless beyond a reasonable doubt to rebut the presumption of prejudice. *See State v. Hopper*, 315 S.W.3d at 367; *State v. Sanders*, 126 S.W.3d 5, 23 (Mo.App. W.D. 2003).

**Analysis**

In his third point, Defendant asserts that the trial court "abused its discretion" in excluding "a missing person report" that Defendant's mother filed with law enforcement that would have "shown" and "corroborated" that Defendant "had been missing for at

least four days before he was found." The trial court did not abuse its discretion in excluding the missing person report because the report was cumulative to the testimony of Defendant's mother and Sheriff Degase as well as other witnesses.

Prior to Defendant's attempt to admit the missing person report filed by Defendant's mother, Sheriff Degase testified that (1) he "knew [Defendant] had been in the woods for a couple, three days at least" before he was found on August 4, (2) Defendant's "wife was picked up in that area" on August 2, (3) a report Defendant was missing was filed on August 3, (4) law enforcement searched the area for Defendant on August 3, and (5) the search included the use of a helicopter and plane. Mr. Ladd and Sergeant Jones also testified that a search for a missing person occurred on August 3 in the area where Defendant ultimately was found on August 4. Finally, almost immediately after the trial court excluded the missing person report, Defendant's mother testified "it was, like, five and a half days he was missing totally."

The missing person report clearly was cumulative to significant other evidence that Defendant had been missing for a significant period of time before he was found. The trial court did not abuse its discretion in excluding cumulative evidence. Defendant's third point is denied.

The trial court's judgment is affirmed.


Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, J. - Concurs

Don E. Burrell, J. - Concurs

15