

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC94658 |
| | ) | |
| CHADWICK LELAND | ) | |
| WALTER, | ) | |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY**
The Honorable Larry D. Harman, Judge

*Opinion issued January 26, 2016*

Chadwick Leland Walter (hereinafter, "Walter") challenges his convictions for attempted manufacture of methamphetamine, section 195.211, RSMo 2003, and maintaining a public nuisance, section 195.130, RSMo 2000. This Court holds that the trial court plainly erred in failing to grant him a new trial based upon a photograph used in a slideshow during the state's closing argument. Accordingly, the trial court's judgment is reversed, and the case is remanded for a new trial.

## Factual Background

On August 4, 2011, Walter and his girlfriend, Kathy Martinson (hereinafter, "Martinson"), visited various stores and pharmacies to purchase pseudoephedrine pills, lithium batteries, and fuel for a camp stove. Later that same day, Shane Nicholson (hereinafter, "Nicholson") was stopped by a trooper for a traffic violation. Nicholson

was arrested and taken to the sheriff's office. At the sheriff's office, Nicholson's cellular telephone received a call. Nicholson was asked to place the call on "speaker" so that both he and the trooper could hear the conversation. The trooper recognized the voice on the telephone as Walter's. During the conversation, Nicholson asked Walter if "it was fire," and Walter replied, "Yeah."[1]

On August 5, 2011, the trooper obtained a search warrant for Walter's residence. The trooper and nine other officers executed the search warrant at Walter's residence. Once they entered Walter's residence, they found an active methamphetamine laboratory. Walter was arrested. Walter was charged with one count of attempted manufacture of a controlled substance and one count of maintaining a public nuisance.

At trial, the state presented evidence that it believed supported a finding of Walter's guilt. Walter contested the state's evidence and presented his own evidence, which, if believed, could support a finding of not guilty.

During its closing argument, the state used a visual presentation with various photographs, diagrams, and lists. The final photograph used in the slideshow was an enlarged color photograph of Walter. In the photograph, Walter is wearing a bright orange prison jumpsuit and the word "GUILTY" is superimposed in large, block, red letters, running diagonally across Walter's face and filling the frame of the photograph. The jury was then instructed, and it retired to deliberate.

---

[1] Among methamphetamine users, "fire" refers to a "good" or "excellent" quality drug. However, there was no evidence presented as to whether Walter knew the terminology employed by methamphetamine users.

At some point during the jury's deliberations, defense counsel was either made aware of or viewed the state's closing argument slideshow. The record does not indicate when during the jury's deliberation defense counsel viewed Walter's photograph with the word "GUILTY" imposed across it. Further, there was no record as to whether the trial court also viewed the state's slideshow.

After the jury rendered its guilty verdict and was discharged, defense counsel made an objection to the state's improper and prejudicial presentation of Walter's photograph displayed to the jury during closing argument. Defense counsel stated he did not make a contemporaneous objection because he did not see the photograph at the time it was displayed. The trial court also admitted that it did not see the photograph in the slideshow during closing argument.[2] The state responded that the photograph without the superimposed text was included in the state's exhibits. The trial court deferred ruling on the objection until defense counsel filed a motion for new trial.

The trial court held a hearing on Walter's motion for new trial. Defense counsel further explained that he did not see the photograph because he was watching the state's attorney address the jury and the screen displaying the images was on the opposite side of

_____

[2] Neither defense counsel nor the trial court were presented with an advance copy of the state's slideshow. Accordingly, the first opportunity they had to view it was contemporaneously with the jury during the state's closing argument. However, due to the configuration of the courtroom, it has been represented that it was not possible to observe the state, the jury, and the slideshow at the same time. Defense counsel and the trial court both indicated they were attempting to observe either the state and/or the jury and did not watch the slides during closing argument. At some point in time, after the jury had retired, defense counsel either saw or was made aware of the objectionable photograph embedded within the slideshow. Defense counsel raised the objection to the photograph after the jury returned with its verdict. Any objection made during deliberations, assuming defense counsel knew of the objectionable photograph at that time, would have had no impact as the jury had already been instructed and retired.

the room from the jury. The trial court overruled Walter's motion for new trial and imposed sentence.

Walter appeals, raising multiple points of error. However, Walter's first allegation of error regarding the trial court's failure to grant him a new trial because the state's use of altered evidence in a slideshow during closing argument denied him of a fair trial is dispositive.

## Standard of Review

The standard of review for alleged error in closing argument depends upon whether defense counsel objects. *State v. Shurn*, 866 S.W.2d 447, 460 (Mo. banc 1993), *cert. denied*, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Walter did not object to the state's altered photograph in the slideshow presentation during closing argument until after the jury had retired and returned its verdict. A defendant must object at the time an allegedly improper argument to the jury is made to preserve the error. *State v. Barker*, 410 S.W.3d 225, 234 (Mo. App. W.D. 2013). Further, when the objection could be made during trial, raising the issue for the first time in a motion for new trial is insufficient to preserve the alleged error. *Id.* The state and Walter both agree that his failure to object to the slideshow during the state's closing argument does not preserve the issue for appeal. Accordingly, this issue is reviewed for plain error only.[3]

---

[3] Contrary to Judge Wilson's position in his dissenting opinion, Walter's failure to object to the admission at trial of Walter's photograph with the word "GUILTY" superimposed across the photograph makes his claim of error unpreserved. *State v. Carter*, 415 S.W.3d 685, 691 (Mo. banc 2013). The fact that he raised the alleged error in his motion for new trial does not change his unpreserved error, which can be reviewed only as plain error, into preserved error, which can be reviewed for an abuse of discretion of the trial court.

4

Including a claim of error in a motion for new trial is a requirement of preserving an issue for review, but a claim of error is not wholly preserved absent a timely objection at trial. Therefore, including a claim of error that was not raised at trial in a motion for a new trial does not change the standard of review from plain error to the lower standard of review for an abuse of discretion. For an allegation of error to be considered preserved and to receive more than plain error review, it must be objected to during the trial *and* presented to the trial court in a motion for new trial. *See, inter alia, Carter*, 415 S.W.3d at 691 (finding the defendant did not object to statements in closing rebuttal argument at trial and the defendant "therefore, did not preserve the issue for review. When a party does not properly preserve an argument at trial, the Court may, in its discretion, review the argument for plain error when there is a manifest injustice or miscarriage of justice."); *State v. McFadden*, 369 S.W.3d 727, 750 (Mo. banc 2012) (failure of defense counsel to object to state's closing argument results in plain error review); *State v. Tisius*, 362 S.W.3d 398, 409 (Mo. banc 2012) (acknowledging that defense counsel's failure to object to the state's closing argument results in plain error standard of review pursuant to Rule 30.20); *State v. Evans*, 410 S.W.3d 258, 265 (Mo. App. W.D. 2013) ("When counsel does not object, however, any claim of error regarding closing argument is not preserved and can be reviewed, if at all, for only plain error resulting in a manifest injustice."); *State v. Thompson*, 401 S.W.3d 581, 590 (Mo. App. E.D. 2013) (finding defendant did not offer a timely objection at the time of the alleged error during closing argument and that his filing of a motion for new trial with the allegation of error failed to preserve the issue for appellate review); *State v. Goeman*, 386 S.W.3d 873, 881 (Mo. App. S.D. 2012) ("Raising an issue for the first time in a motion for new trial, when an objection could have been made at trial, is insufficient to preserve the claimed error for appellate review."); *State v. Tramble*, 383 S.W.3d 34, 37-38 (Mo. App. E.D. 2012) (reviewing the defendant's allegation of error during closing argument for abuse of discretion because the allegation of error was preserved at trial *and* in the motion for new trial); *State v. Chambers*, 234 S.W.3d 501, 512 (Mo. App. E.D. 2007) (quoting *State v. Petty*, 967 S.W.2d 127, 140 (Mo. App. E.D. 1998) and finding that the "general rule with respect to preservation of error is that an objection stating the grounds must be made at trial, the same objection must be set out in the motion for new trial and must be carried forward in the appellate brief to preserve it."); and *State v. Lingle*, 140 S.W.3d 178, 190 (Mo. App. S.D. 2004) (finding defendant did not preserve a complaint for review when he failed to object during closing argument but requested a mistrial at the conclusion of the state's argument and included the alleged error in his motion for new trial). Merely presenting an allegation of unobjected error in a motion for new trial preserves nothing other than the opportunity for an appellate court to engage in plain error review. "[F]ailure to properly object to closing argument at the time it is made to a jury results in a waiver of any right to complain of the argument on appeal, even if the point is preserved in an after trial motion." *State v. Hall*, 319 S.W.3d 519, 523 (Mo. App. S.D. 2010) (quoting *State v. Samuels*, 88 S.W.3d 71, 83 (Mo. App. W.D. 1993) and *Nishwitz v. Blosser*, 850 S.W.2d 119, 124 (Mo. App. E.D. 1993)).

5

An error committed during closing argument will only result in a reversal when it amounts to prejudicial error. *State v. Miller*, 372 S.W.3d 455, 475 (Mo. banc 2012). "A conviction will be reversed based on plain error in closing argument only when it is established that the argument had a decisive effect on the outcome of the trial and amounts to manifest injustice." *State v. Edwards*, 116 S.W.3d 511, 536-37 (Mo. banc 2003), *cert. denied*, 540 U.S. 1186, 124 S. Ct. 1417, 158 L. Ed.2d 92 (2004); Rule 30.20. "The defendant's failure to object to an improper argument is often strategic, and uninvited intervention may emphasize the matter in a way the defendant chose not to." *State v. Carter*, 415 S.W.3d 685, 691 (Mo. banc 2013). In reviewing closing arguments, this Court examines the context of the argument made in light of the entire record. *State v. Anderson*, 306 S.W.3d 529, 543 (Mo. banc 2010), *cert. denied*, 562 U.S. 931, 131 S. Ct. 327, 178 L. Ed.2d 212 (2010); *State v. Taylor*, 298 S.W.3d 482, 510 (Mo. banc 2009), *cert. denied*, 560 U.S. 928, 130 S. Ct. 3323, 176 L. Ed.2d 1226 (2010); *Edwards*, 116 S.W.3d at 537.

## Analysis

Walter challenges the trial court's denial of his motion for new trial based upon an objectionable photograph in the state's closing argument. Walter asserts that the state's use of an altered photograph depicting him in his bright orange prison jumpsuit and with the word "GUITY" stamped across his face in big, red, block letters deprived him of a fair trial. Walter claims the only purpose for the altered photograph was to inflame the jury.

6

*Use of the altered photograph was improper*

Upon Walter's request, the trial court ordered the state to provide Walter and the trial court a copy of the slideshow it used during its closing argument. The state fully complied with this order and reduced the images to printed pages that were able to be included in the legal file for appellate review.[4] The slideshow consisted of a title page, fourteen typed pages with the state's evidence and/or timeline, three diagrams of the residence, and twenty-two separate photographic images, the last image being the altered photograph of Walter in his orange prison jumpsuit.

During closing argument, the state is allowed to argue the evidence and all reasonable inferences from the evidence. *State v. Brown*, 337 S.W.3d 12, 14 (Mo. banc 2011). While the state has wide latitude in closing arguments, closing arguments must not go beyond the evidence presented, and courts should "exclude 'statements that misrepresent the evidence or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury.'" *State v. Deck*, 303 S.W.3d 527, 543 (Mo. banc 2010), *cert. denied*, 561 U.S. 1028, 130 S. Ct. 3505, 177 L. Ed.2d 1095 (2010). Further, a prosecutor may not "stray beyond the evidence presented to the jury, suggest special or personal knowledge, or make ad hominem attacks designed to inflame the jury." *State v. Rasheed*, 340 S.W.3d 280, 286 (Mo. App. E.D. 2011). "The latitude given to parties in

---

[4] Given the inclination toward the ever-increasing use of technology in our daily lives and the courts, it is inevitable that there will be an increase in the use of more technology during trials. To control the potential erroneous and prejudicial impact upon a jury, attorneys are encouraged to provide a preview of any slideshow to defense counsel before showing it to a jury. This simple act is not burdensome and could prevent the necessity of remanding a case for a new trial.

closing does not serve as an end run around the law of evidence." *Brown*, 337 S.W.3d at 15.

The state argues that the photograph was admitted as part of an exhibit with Walter's booking records.[5] The photograph in the exhibit was in an unaltered form, not bearing the red, block letters spelling "GUILTY" across Walter's face. Since the state is allowed to make inferences from the evidence, it asserts there was no error in altering the photograph and placing it in the closing argument slideshow. This Court disagrees.

Closing argument grants each side the opportunity to highlight the evidence that was presented. Using visual aids in explaining a case to a jury is acceptable, but the visual aid must contain admissible evidence. *Matter of Passman's Estate*, 537 S.W.2d 380, 386 (Mo. banc 1976). Parties are not allowed the opportunity "to present altered versions of admitted evidence to support [his or her] theory of the case …." *State v. Walker*, 341 P.3d 976, 985 (Wash. 2015); *see also In re Glasmann*, 286 P.3d 673, 678 (Wash. 2012) ("Indeed, here the prosecutor's modification of photographs by adding captions was the equivalent of unadmitted evidence.").

The state's modification of the photograph by adding the red, block letters with the word "GUILTY" and superimposing it across Walter's face clearly altered the form of the admitted evidence. As altered, this photograph would not have been admissible evidence. Accordingly, the use of the altered photograph was the equivalent of

---

[5] This exhibit was not made part of the record on appeal. However, it is uncontested that the smaller, unaltered photograph was admitted into evidence during the state's rebuttal. Walter objected to the admission of his booking records, but he did not object specifically to the admission of the photograph.

8

introducing unadmitted evidence.[6]  Accordingly, it was error and this Court must determine whether this amounted to prejudicial error.

*Walter was prejudiced*

The trial court erred in allowing the state to use Walter's altered photograph with the word "GUILTY" imposed across his face, but Walter is not entitled to relief unless he was prejudiced.  *Miller*, 372 S.W.3d at 475.  The state asserts that even if adding Walter's altered photograph in the closing argument slideshow were in error, there was overwhelming evidence of his guilt.  Hence, the state believes that Walter's conviction should stand because "overwhelming evidence of guilt may lead an appellate court to find that a defendant was not prejudiced by trial court error."  *State v. Banks*, 215 S.W.3d 118, 121 (Mo. banc 2007).

The issue of prejudice in many cases is resolved by finding a defendant was not harmed by an improper closing argument due to the existence of overwhelming evidence and that, accordingly, there is no prejudice.  *State v. Brightman*, 388 S.W.3d 192, 203 (Mo. App. W.D. 2012); *State v. Barton*, 936 S.W.2d 781, 786 (Mo. banc 1996).  "Overwhelming evidence of guilt suggests there cannot be any reasonable doubt the defendant committed the crime …."  *State v. Duncan*, 397 S.W.3d 541, 544 (Mo. App. E.D. 2013); *see also State v. Dexter*, 954 S.W.2d 332, 342 (Mo. banc 1997).  Trial court

---

[6] The state's commentary that the slideshow depicted Walter's photograph and then the prosecutor merely wrote "guilty" across that image during the slideshow is specious. When the state reduced the slideshow to printed material, it is clear there was only one photograph of Walter's shown.  Further, the state's comments that the prosecutor merely wrote "guilty" on the photograph as part of his argument also rings hallow.  The all capital block lettering of the word "guilty" on Walter's photograph clearly was part of a pre-designed slideshow with a graphic, rather than the prosecutor modifying an image as he was speaking to the jury.

9

error will be found to be prejudicial when "there is a reasonable probability that the trial court's error affected the outcome of the trial." *Duncan*, 397 S.W.3d at 544 (quoting *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006), *cert. denied*, 549 U.S. 840, 127 S. Ct. 75, 166 L. Ed.2d 68 (2006)).

In this case, it is clear the state made a submissible case against Walter. Yet, the relevant inquiry is not whether a submissible case was made, but rather whether the state's use of Walter's altered photograph had an effect on the jury's deliberations to the point that it contributed to the guilty verdict. Walter contested the state's evidence presented and offered his own version of events, which, if believed, would serve as the basis for an acquittal. Looking at the entirety of the record, there was not overwhelming evidence to support only a guilty conviction.

In support of Walter's defense, Martinson testified she purchased the items to manufacture methamphetamine. Martinson further testified that her intent in purchasing those items was to manufacture methamphetamine. Martinson stated that the manufacturing was done without Walter's knowledge and outside of his presence. There was no evidence Walter knew how to make methamphetamine. While Walter did purchase some pseudoephedrine pills, there was evidence that he suffered from chronic sinus infections and used the pseudoephedrine pills to treat his symptoms. Further, the presence of the syringe in the jeans at Walter's home was not connected to either methamphetamine use or to Walter.

Rather than merely relying on the evidence it presented, the state chose to alter a piece of admitted evidence and present it to the jury during closing argument. The only

10

rational reason the state could have for presenting this altered photograph of Walter in his recognizable orange prison jumpsuit was to influence the jury's determination of his guilt. The state argues that it did nothing improper because the photograph was previously admitted in its unaltered state.[7]

The state's obligation in a criminal prosecution is not to win the case but to do justice. *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935). "It is as much [the state's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Id.* This Court has observed that during trial, opposing counsels may believe that "zealous advocacy permits, if not demands, that opponents be personally derided and that cases should be decided by appeals to prejudice, fear, envy, and bias, regardless of whether those emotions have anything to do with the facts and law of the case." *Banks*, 215 S.W.3d at 122. This mindset is antithetical to the purpose of a trial and should not be tolerated.

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453, 15 S. Ct. 394, 403, 39 L.Ed. 481, 491 (1895). The impact a particular action may have on a jury is difficult to fully determine, but this Court may look to "the likely effects of a

---

[7] While the state may argue there was no improper use of Walter's photograph because it was a previously admitted exhibit, the state did not label it as an exhibit in the slideshow. Each photograph included in the slideshow, but for the altered photograph, was labeled with an exhibit number. Walter's altered photograph had no such exhibit number displayed on it.

11

particular procedure, based on reason, principle, and common human experience."

*Estelle v. Williams*, 425 U.S. 501, 504, 96 S. Ct. 1691, 1693, 48 L. Ed. 2d 126 (1976). This Court recognizes that forcing a defendant to appear at trial in prison-issued attire undermines the presumption of innocence and the fairness of the fact-finding process. *State v. Harris*, 868 S.W.2d 203, 208 (Mo. App. W.D. 1994) and *Deck v. Missouri*, 544 U.S. 622, 630, 125 S. Ct. 2007, 2013, 161 L. Ed. 2d 953 (2005).  A defendant is not required to appear at his or her trial wearing prison attire "because of the possible impairment of the presumption so basic to the adversary system" *Estelle*, 425 U.S. at 504, 96 S. Ct. at 1693.  "[T]he consequences of compelling a defendant to wear prison clothing or of binding and gagging an accused during trial, the precise consequences … cannot be shown from a trial transcript." *Riggins v. Nevada*, 504 U.S. 127, 137, 112 S. Ct. 1810, 1816, 118 L. Ed. 2d 479 (1992) (internal citations omitted).  The Supreme Court recognized that a defendant appearing in "such distinctive, identifiable attire may affect a juror's judgment." *Estelle*, 425 U.S. at 504-05, 96 S. Ct. at 1693.

While Walter was not forced to appear physically in prison attire during his trial, the altered photograph the state presented during its closing argument compelled the same *de facto* influence upon the jury.  "[V]isual arguments manipulate audiences by harnessing rapid unconscious or emotional reasoning processes and by exploiting the fact that we do not generally question the rapid conclusions we reach based on visually presented information."  Lucille A. Jewel, *Through a Glass Darkly:  Using Brain and Visual Rhetoric to Gain A Professional Perspective on Visual Advocacy*, 19 S. Cal. Interdisc. L.J. 237, 289 (2010).

12

**Conclusion**

In this case, the state's use of the altered photograph of Walter impinged upon the presumption of innocence and the fairness of the fact-finding process by juxtaposing the photograph of Walter wearing prison attire and "GUILTY" stamped across his face with him sitting at the defendant's table in plain clothes. The trial court erred in failing to grant Walter a new trial based upon the state's use of the altered photograph during closing argument, and Walter was prejudiced thereby. Accordingly, Walter's convictions for attempted manufacture of methamphetamine and maintaining a public nuisance are vacated, and the case is remanded for a new trial.

This Court need not address Walter's remaining points on appeal. "Prolix claims of trial error are presented which will not necessarily occur on retrial, and so we do not consider them. The state may study the appellant's brief and decide whether there are risks as to evidence and argument which should be avoided when the case is tried again." *State v. Wacaser*, 794 S.W.2d 190, 196 (Mo. banc 1990). This Court will not issue an advisory opinion. *State v. Swiggart*, 458 S.W.2d 251, 252 (Mo. 1970).

The trial court's judgment is vacated, and the case is remanded for a new trial.

_____
GEORGE W. DRAPER III, JUDGE

Breckenridge, C.J., Stith and Teitelman, JJ., concur; Wilson, J., dissents in separate opinion filed; Russell, J., dissents in separate opinion filed; Fischer, J., concurs in opinion of Russell, J.

13



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,             )

                          )

            Respondent,     )

                          )

v.                       )      No. SC94658

                          )

CHADWICK LELAND WALTER,   )

                          )

            Appellant.      )

## DISSENTING OPINION

I agree with the result reached in the dissenting opinion but write separately because both the dissenting opinion and the principal opinion apply the wrong standard of review.[1]  This error is all too common when a criminal defendant raises a claim for the first time in a motion for a new trial.  This Court's rules of criminal procedure are clear in such circumstances, but the confusion results because appellate courts often misidentify which claim was preserved for appellate review.

---

[1]  Both the majority and dissenting opinions attempt to justify applying the wrong standard of review in this case by noting that both parties agree "plain error" review is appropriate.  Identifying the proper standard of review is a question of law, and agreements between the parties "cannot be invoked to bind or circumscribe a court in its determination of questions of law." *State v. Biddle*, 599 S.W.2d 182, 186 n.4 (Mo. banc 1980).  *See State v. Hardin*, 429 S.W.3d 417, 421 n.4 (Mo. banc 2014) (state conceded defendant's double jeopardy claim, but this Court denied the claim after noting "parties cannot stipulate to legal issues").

1

Parties do not commit error, only the trial court can do so.  So, if the defense timely objects to the prosecutor's misconduct in closing argument and the trial court denies that objection (or sustains it but refuses to grant the relief requested), the defendant can claim in the motion for new trial that the trial court erred in overruling the objection or failing to grant the requested relief.  If the trial court disagrees, Rule 29.11(d) provides that the defendant has preserved this claim for appellate review.  What claim? The defendant's claim that the trial court erred by overruling the objection (or failing to grant the relief requested) during closing argument.

But consider what happens when, as here, defense counsel does not raise a timely objection during closing argument.  Obviously, Walter could not move for a new trial on the ground that the trial court erred by overruling an objection defense counsel never made or by failing to grant relief defense counsel never requested.  Therefore, the only claim that Walter could (and did) raise in his motion for new trial is the claim that the trial court should grant a new trial because it "plainly erred" under Rule 29.12(b)[2] when it failed to interject itself *sua sponte* into the closing argument to admonish the state or grant a mistrial on the basis of a slide that Walter concedes the trial court did not see and to which Walter's counsel did not object.

---

[2]  Rule 29.12(b) is directed at trial courts, not appellate courts, and it gives trial courts discretion to grant relief on a claim of plain error in a motion for new trial if:  (a) the error affected "substantial rights," and (b) the court finds that a "manifest injustice or miscarriage of justice" would occur if relief is not granted.  On the other hand, Rule 30.20 applies to "plain error" in appellate courts.  It allows appellate courts to grant relief on the basis of claims that were not briefed – or were not properly briefed – if a plain error affected the defendant's substantial rights and a manifest injustice or miscarriage of justice would result if relief is not granted.

2

Rule 29.12(b) gives the trial court discretion to grant or deny such a "plain error" claim and, if it is denied, Rule 29.11(d) provides that this claim is preserved for appellate review. But, as above, the important question is **what claim** is preserved. The **only** claim Walter has preserved for appellate review is the only claim he raised, i.e., that the trial court erred by not granting a new trial after it failed to interject itself *sua sponte* into the state's closing argument and admonish the prosecution or grant a mistrial on the basis of a slide the trial court did not see. Because Rule 29.12(b) gives the trial court discretion in deciding such claims, an appellate court may only review Walter's claim for an abuse of that discretion.

Accordingly, the proper standard of review for Walter's claim is not the plain error analysis available to trial courts under Rule 29.12(b) when a defendant raises a claim for the first time in the motion for new trial. Nor is it the plain error analysis available to appellate courts under Rule 30.20 when a defendant fails to brief (or properly brief) a claim of error (preserved or not) that affected substantial rights and resulted in manifest injustice or a miscarriage of justice.[3] Instead, the proper standard of review in this case – and in any case where the defense properly briefs a claim of error that was raised for the first time in the motion for new trial – is abuse of discretion because Rule 29.12(b) gives

---

[3] This case does not present the question of whether an appellate court may review for plain error a claim that the defendant did not raise during trial *or* in the motion for a new trial. Rule 84.13(c) expressly allows for such review in civil cases, *see* Rule 84.13(c) (plain errors may be considered "though not raised or preserved"), but Rule 30.20 contains no such language. By giving effect to this difference and not reviewing such claims on direct appeal even for plain error, counsel's failure to raise or preserve the claim can be challenged under Rule 29.15. That is the preferable approach because, in the post-conviction context, the motion and appellate courts will have the benefit of counsel's explanation rather than having to guess whether the failure to raise or preserve the error was the result of incompetence or trial strategy.

the trial court discretion to grant or deny such claims. Here, given the overwhelming weight of the evidence against Walter, I would hold that the trial court did not abuse this discretion when it denied Walter relief on his plain error claim.

_____
Paul C. Wilson, Judge



# SUPREME COURT OF MISSOURI
# en banc

STATE OF MISSOURI,                        )
                                          )
          Respondent,          )
                                          )
v.                                        )     No. SC94658
                                          )
CHADWICK LELAND                           )
WALTER,                                   )
                                          )
          Appellant.           )

## DISSENTING OPINION

I respectfully dissent. Although I agree that the prosecutor's use of the altered photograph during closing arguments was likely improper, under our applicable standard of review for plain error, such conduct amounts to reversible error only if it is established that it had a decisive effect on the jury's verdict and substantially affected Defendant's rights resulting in a manifest injustice. In light of the overwhelming evidence of Defendant's guilt and the trial court's superior position from which to judge any possible prejudice from the prosecutor's conduct, I would hold that no such showing has been made, and, consequently, I would affirm the decision of the trial court.

*Factual Background*

Because the alleged error must be considered in the context of the entire record, a more complete discussion of the facts adduced at trial is necessary.

The record shows that Defendant and his girlfriend went on a shopping spree purchasing the items used in the manufacture of methamphetamine. They first went to Walmart, where they purchased lithium batteries. Next they went to a Red Cross pharmacy, where Defendant individually purchased pseudoephedrine pills. Once he completed his purchase, his girlfriend separately bought pseudoephedrine pills at the same Red Cross. They then returned to Walmart, where they purchased more pseudoephedrine pills. After that, his girlfriend entered a different Red Cross and purchased more pseudoephedrine pills. The couple returned once more to Walmart, where his girlfriend bought Coleman camp fuel.

Later that same day, an individual named Shane Nicholson was arrested after being stopped for a traffic violation. While in custody at the Saline County Sheriff's Office, Nicholson received a text message that identified the sender as "Chad," which is an abbreviation of Defendant's first name. Later Nicholson's telephone rang, and he put the telephone on speaker so that the officer could hear the conversation. The officer, who had encountered Defendant on previous occasions, identified Defendant as the caller. Nicholson asked the caller "if it was fire," and Defendant replied "yeah." In the context of methamphetamine use, "fire" means excellent methamphetamine.

Officers conducted a search of Defendant's residence pursuant to a warrant in the early morning hours the next day. When the police entered the residence, Defendant was

2

in the basement. Officers found a number of items in the basement that are used in the production and consumption of methamphetamine, including: salt, lithium batteries, two quarts of acetone, starting fluid, Liquid Fire, a propane torch, and a metal spoon with a powdery residue. In another part of the basement, officers also found a plastic bag containing a white powdery substance in a bourbon container, a jug with a strong chemical odor, and a Walmart card with white powder residue on it, which was sitting next to a razor blade and another plastic bag also coated in white powder residue.

The residence also contained an outdoor wood-burning stove, where officers found burnt lithium batteries, burnt packaging for pseudoephedrine pills, a burnt acetone container, a burnt Coleman fuel container, and burnt syringes.

A strong chemical smell emanated from the detached garage. Officers found that the smell was coming from the engine compartment of Defendant's truck, which he and his girlfriend drove to make their purchases the previous day. Under the hood of the truck, officers found an active methamphetamine lab, including chemicals undergoing the process of manufacturing methamphetamine and a large red mixing bowl containing samples of methamphetamine. When shown the contents of the red mixing bowl, Defendant voluntarily exclaimed, "this is f***ing bullshit, someone set me up, you set me up." All of the pseudoephedrine purchased by him and his girlfriend the previous day, including the pseudoephedrine that he purchased individually, was found to have been used in the attempt to make methamphetamine at his residence.

During trial, Defendant's mother testified that he had a history of allergies and chronic sinus infections. His girlfriend testified that, although she had made her

3

purchases with the intent to manufacture methamphetamine, Defendant did not know

about her plan, that he had purchased pseudoephedrine only because he was suffering

from a sinus infection or allergies that day, and that he did not know about or participate

in the attempt to make methamphetamine at his residence. She admitted, however, that

she had previously told her parole officer that they both purchased the pseudoephedrine

pills for the purpose of producing methamphetamine.

The booking records from Defendant's arrest for methamphetamine production

reflected that he did not have any medical condition that required the treatment of

pseudoephedrine pills. During his booking, he was asked whether he: (1) had a fever on

that night; (2) had a history of allergies; (3) had a history of asthma or hay fever; (4) had

recently had a cough; (5) currently had a sore throat, a cough, or a runny nose; and (6)

had a history of any other medical conditions. He responded in the negative to all of

these questions.

*Standard of Review*

Both parties agree that the prosecutor's improper use of the photograph was not

preserved for appeal because Defendant failed to object during the state's closing

argument. Consequently, his claim is reviewable, if at all, only for plain error.[1] Rule

---

[1] Even though Defendant apparently became aware of the photograph while the jury was deliberating, he waited until after the jury returned its verdict to raise the issue with the trial court. Such conduct raises the possibility that Defendant held back his objection until he saw what the jury's verdict would be. "To convict a trial court of an error, not put forth by the defendant (e.g., failure to declare a mistrial *sua sponte*), allows an accused to stand mute when incidents unfavorable to him or her occur during trial, gamble on the verdict, and then seek favorable results on appeal. This puts courts in an untenable position, and it is contrary to the principle of law that an appellate court will

4

30.20.  As a result of Defendant's request for plain error review, this Court then engages in a two-step process to determine if plain error exists.  *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009).  First, the Court determines whether the claim of error facially establishes substantial grounds for believing that a manifest injustice or miscarriage of justice has resulted.  *Id.*  All prejudicial error does not constitute plain error, however.  *Id.*  Plain error must be evident, obvious, and clear.  *Id.*  Second, if there is plain error under the first step, the Court must determine "whether the claimed error resulted in manifest injustice or a miscarriage of justice."  *Id.* at 607-08.  Manifest injustice is a higher standard than prejudice.  *Deck v. State*, 68 S.W.3d 418, 424 (Mo. banc 2002).  On plain error review, the appellant must show that the error affected his or her rights so substantially that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected.  *Id.*

Plain error relief is rarely granted for a closing argument claim because withholding an objection to an improper argument is often a strategic decision made by counsel.  *State v. Johnson*, 284 S.W.3d 561, 573 (Mo. banc. 2009).  This Court examines closing arguments in the context of the entire record.  *State v. Anderson*, 306 S.W.3d 529, 543 (Mo. banc 2010).  Plain error in closing arguments is grounds for reversal of a conviction only when it is established that the argument had a decisive effect on the outcome of the trial and amounts to a manifest injustice.  *State v. Edwards*, 116 S.W.3d 511, 536-37 (Mo. banc 2003).  Overwhelming evidence of guilt may lead an appellate

---

not convict a trial court of an error not put before it to decide." *State v. White*, 291 S.W.3d 354, 359 (Mo. App. 2009) (internal citations omitted).

5

court to find that a defendant was not prejudiced by trial court error. *State v. Davis*, 318 S.W.3d 618, 642 (Mo. banc 2010). The defendant carries the burden of proving decisive effect. *Anderson*, 306 S.W.3d at 543.

*Discussion*

Defendant fails to prove that the prosecutor's use of the altered photograph during closing arguments had a decisive effect on the outcome of the trial and substantially affected Defendant's rights resulting in a manifest injustice in light of the overwhelming evidence of his guilt. The photograph shown by the prosecutor was not a full body shot of Defendant in what the majority terms "a bright orange jumpsuit," but rather depicted him only from the shoulders up, wearing a reddish-orange, collarless V-neck top.[2] The photograph did not signal to a layperson that the individual was clothed in prison garb. In fact, the mugshot taken here at booking is indistinguishable from the typical mugshot, in which the accused stands against a height chart wearing the clothes he or she had on at the time of the arrest. Such photographs are part of the standard booking process after an arrest and are not evidence of an accused's guilt. Although showing a color mugshot of a defendant with the word "GUILTY" stamped across it in bold red letters may disparage the presumption of innocence and impair a fair trial, it does not rise to the level of the constitutional violation found in *Deck v. Missouri*, 544 U.S. 622, 630 (2005).[3]

---

[2] The altered mugshot as shown to the jury is attached to this opinion.

[3] *Compare Deck*, 544 U.S. at 629-31 (an accused's due process rights are violated when he or she is required to appear in court wearing shackles without a trial court determination that the shackles are justified by circumstances specific to the accused's case), *with Estelle v. Williams*, 425 U.S. 501, 512-13 (1976) (absent an objection by defense counsel, an accused's appearance in identifiable prison garb did not establish a

6

Further, the prosecutor's conduct here did not affect Defendant's substantial rights or cause a manifest injustice because the prosecutor was allowed to give his personal opinion that, based on facts in evidence, the Defendant was guilty. *State v. Moore*, 428 S.W.2d 563, 565 (Mo. 1968). In this case, the prosecutor first properly offered into evidence the mugshot unaltered, stating "that is simply not the face of someone who's suffering from a major sinus infection." The prosecutor was allowed to show the Defendant's mugshot because it had already been admitted into evidence. *State v. Walker*, 616 S.W.2d 89, 94 (Mo. App. 1981) (noting that mugshots are considered neutral and do not indicate prior criminal activity). The prosecutor's click of a button in the PowerPoint slideshow that added the word "GUILTY" over Defendant's mugshot is simply a combination of these permitted actions.

The State has wide latitude during closing arguments, but a prosecutor must not go beyond the evidence presented, misrepresent the evidence or the law, or introduce irrelevant prejudicial matters. *State v. Deck*, 303 S.W.3d 527, 543 (Mo. banc 2010). As a quasi-judicial officer representing the State, a prosecuting attorney has a duty "not to convict at any cost but to see that justice is done and that the accused receives a fair and impartial trial." *State ex rel. Jackson Cnty. Prosecuting Attorney v. Prokes*, 363 S.W.3d 71, 85 (Mo. App. 2011).

---

constitutional violation because there was no evidence that the state compelled him to appear in that manner of dress), *and State v. Harris*, 868 S.W.2d 203, 208 (Mo. App. 1994) (no manifest injustice resulted when an accused appeared in court wearing prison clothing because, without an objection, nothing in the record indicated that the trial court compelled him to do so).

The prosecutor's act of digitally imposing the word "GUILTY" across the PowerPoint mugshot of Defendant was disrespectful of Defendant's presumption of innocence, and such conduct should not be condoned. However, it is difficult to see how this alleged misconduct could have misled the jury. No juror, upon seeing the altered photograph in the context of the prosecutor's closing argument, would have believed that the Defendant had been found guilty in a prior trial or that he had committed other crimes. Even assuming the prosecutor's argument was improper, under the plain error standard of review, Defendant has the burden of proving that the state's improper use of the altered mugshot had a decisive effect on the outcome of the trial and affected his rights so substantially that a manifest injustice will occur if left uncorrected. *State v. Parker*, 856 S.W.2d 331, 332-33 (Mo. banc 1993). In light of the overwhelming evidence of his guilt, Defendant has not shown that the altered photograph decisively affected the jury's verdict or substantially affected his rights such that a manifest injustice resulted.

Taken as a whole, the evidence shows that Defendant and his girlfriend went shopping for ingredients used to make methamphetamine and that they did so in a suspicious, piecemeal manner. These ingredients, including the pseudoephedrine that he bought individually, were then used in an attempt to manufacture methamphetamine at his residence later that night. During their search of the residence, officers found a plethora of materials used in the making of methamphetamine as well as an active methamphetamine lab set up under the hood of Defendant's truck, which he had been driving mere hours before. When confronted with the red mixing bowl taken from his

8

garage, Defendant responded immediately and defensively that he had been "set up," which indicates that he knew the bowl contained methamphetamine.

During booking procedures later that night, Defendant stated that he was not suffering from fever, allergies, asthma, hay fever, sore throat, cough, or runny nose. This directly contradicts his girlfriend's trial testimony that, while she intended to make methamphetamine with her purchases, Defendant was unaware of that intent and bought his pseudoephedrine only for the legitimate purpose of treating allergies or a sinus infection. Also diminishing the credibility of her testimony is the fact that he was present with her during many of her purchases, and that she told her parole officer that they both purchased pseudoephedrine with the intent to make methamphetamine.

The State's evidence did not have to go uncontested to amount to overwhelming evidence of guilt. Defense counsel's contentions that Defendant had no knowledge of, and did not participate in, the attempt to make methamphetamine at his own residence with ingredients he himself purchased one day prior, was simply incredible, and obviously not believed by the jury.[4] When the evidence of guilt was overwhelming, there is certainly no way to conclude that, without the alleged misconduct, the outcome of the trial would have been, or even reasonably might have been, different. There is no rational reason why the jury would have let this alleged misconduct affect its decision, especially in light of the overwhelming evidence against Defendant. The altered mugshot could not have had a decisive effect on the outcome of this case and did not substantially

---

[4] Evidence is reviewed in the light most favorable to the verdict. *State v. Taylor*, 298 S.W.3d 482, 491 (Mo. banc 2009).

9

affect Defendant's rights resulting in a manifest injustice. While I recognize the importance of reminding state actors of their duty to see that the accused receives a fair and impartial trial, this Court should remand for a new trial only when necessary to correct a manifest injustice to the Defendant, and not to teach a lesson to the state. I find no such injustice here. Our dockets are too crowded, and the jurors' time is too valuable, to be used so cavalierly by this Court.

I would affirm the decision of the trial court.[5]

_____
Mary R. Russell, Judge

_____
[5] I would affirm all other points raised by Defendant on appeal.



100

11