**STATE of Missouri, Respondent,**

v.

**Mike PERRY, Appellant.**

**No. SC 89240.**

Supreme Court of Missouri,
En Banc.

Jan. 27, 2009.

Gwenda R. Robinson, Office of the Public Defender, St. Louis, for Appellant.

Christopher A. Koster, Atty. Gen., Richard Starnes, Shaun Mackelprang, Asst. Attys. Gen., Jefferson City, for Respondent.

LAURA DENVIR STITH, Chief Justice.

A jury found Mike Perry guilty of first-degree child molestation. On appeal he

asserts that section 491.075, RSMo 2000,[1] is unconstitutional on its face and as applied to him. He alleges it improperly makes admission of out-of-court statements by a child witness depend on whether the statements demonstrate sufficient indicia of reliability rather than on whether they satisfy the Confrontation Clause as interpreted by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

■ This Court disagrees. A statute is unconstitutional on its face where it cannot be applied constitutionally applied in any circumstance. That is not the case here, for *Crawford* clearly permits introduction of non-testimonial statements as well as of testimonial statements if the declarant testifies at trial or, if unavailable, the defendant had a prior opportunity to cross-examine the declarant. That is also what section 491.075 permits.

■ Moreover, section 491.075 is not unconstitutional as applied to Mr. Perry, for his accuser testified and was subject to cross-examination at trial. *Crawford* explicitly states that in such cases the Confrontation Clause is no bar to admission. Likewise, the Confrontation Clause does not prohibit states from imposing additional prerequisites to admission of statements, such as requiring that they fall within hearsay exceptions or show other indicia of reliability of the kind required by section 491.075. Under the circumstances of this case, the Confrontation Clause simply is not implicated.[2]

This Court also rejects Mr. Perry's argument that the evidence was not sufficient to support the verdict and that the trial court plainly erred in failing, *sua sponte*, to strike the prosecutor's closing argument referring to Mr. Perry as a "child molester" and a "sexual predator" who was "grooming" the victim for a more serious crime. The judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In October 2005, Mike Perry was living in the apartment of a long-time friend, K.R. ("Stepfather") who shared the apartment with his fiance ("Mother") and her children, including six-year-old N.M. ("Victim"). One night, several months after Mr. Perry had moved into the couples' apartment, Mother heard Victim in the living room up past her bedtime. She walked into the living room and saw Victim stretched out on the floor watching television. Mother found this unusual, as Victim normally was in bed by this time. She called Victim over to talk, but Stepfather told Mother that he wanted to talk to Victim alone.

Mother testified at trial that she listened at the closed door and that when she heard Stepfather and Victim saying "something about touching," she rushed in and asked what was going on. Victim said Mr. Perry "had touched her vagina with his foot." Stepfather testified at trial that Mr. Perry had approached him before the conversation occurred with Victim and complained that Victim "was touching him and rubbing him on his arm and on his leg like she shouldn't be doing and it made him feel

1. Unless otherwise noted, all subsequent statutory references are to RSMo 2000.

2. As this Court noted in *State v. Justus*, 205 S.W.3d 872, 878 (Mo. banc 2006), the Confrontation Clause does not permit introduction of prior testimonial statements without

an opportunity for cross-examination but, as in *Justus*, the constitutionality of the portions of the statute that Mr. Perry alleges violate this principle is not at issue here, and this Court does not address hypothetical situations.

uncomfortable." Because of uncertainty this created as to exactly what had happened, Mother and Stepfather did not require Mr. Perry to leave immediately. Two weeks later, however, Mother insisted that Mr. Perry leave. Mother testified she asked him to leave because she did not feel that Mr. Perry had respect for her home or that he cared about his relationship with Stepfather.

Mr. Perry voluntarily left without taking his belongings. When Mr. Perry returned the next day to get his things, and learned that, in the interim, Mother had put them in the garbage, he and Mother got into an argument. Eventually, Mother called the police and told them that there was a man in her apartment who had molested her daughter and that they needed to come and get him. Mother and Victim spoke with the police, who then read Mr. Perry his rights and interrogated him. Mr. Perry admitted that the touching had occurred but said he simply fell asleep on the couch and awoke to find Victim moving up and down on his foot. He said he sternly told Victim he would inform Stepfather about what she was doing and that he did so. Mr. Perry refused to put this statement in writing.

Victim was taken to Children's Hospital for an examination, and a month later forensic interviewer Luzette Woods conducted a videotape interview of her at the Child Advocacy Center. Initially, Victim was reluctant to speak about the incident, but later disclosed that while sitting on the couch one morning, Mr. Perry placed his socked foot under her nightgown and rubbed his foot, in a circular motion, on her vagina.

Mr. Perry was charged with first-degree child molestation. At the trial, the state introduced the videotape interview of Victim into evidence pursuant to section 491.075. Mr. Perry objected to the admis-sion of the videotape, claiming it violated his right to confront the witness against him, even though Victim was present, testified, and was subject to cross-examination at trial. During that live trial testimony, Victim talked about the events leading up to and surrounding the charges, saying that Mr. Perry put his foot under her nightgown. She then said that what he did made her feel uncomfortable and later, she said, it made her feel horrible, but she said she did not "want to say" exactly what he did with his foot. She also stated that on another day he had "rubbed his butt" through his clothes on her stomach and it made her feel horrible.

During closing arguments, the prosecutor made reference to the videotape, compared Mr. Perry to a "sexual predator," and referred to him as a "child molester" who was "grooming" Victim for a more serious crime. Mr. Perry's defense counsel did not object to the closing argument. The jury found Mr. Perry guilty of first-degree child molestation. The trial court sentenced him to seven years imprisonment. He appealed to the Court of Appeals, Eastern District, which transferred the case to this Court, prior to opinion, in light of Mr. Perry's claim that introduction of Victim's videotape under section 491.075 violated his confrontation rights under the Sixth Amendment as explained in *Crawford.*

## II. STANDARD OF REVIEW

▪▪▪ Construction of a statute is a question of law, which this Court reviews *de novo.* A "statute is presumed to be valid and will not be declared unconstitutional unless it clearly contravenes some constitutional provision." *Doe v. Roman Catholic Diocese of Jefferson City,* 862 S.W.2d 338, 340 (Mo. banc 1993). When a defendant challenges the sufficiency of evi-

dence to support a conviction, the test is whether a reasonable juror might have found defendant guilty beyond a reasonable doubt. *State v. Smith,* 944 S.W.2d 901, 916 (Mo. banc 1997). The reviewing court takes the evidence in the light most favorable to the verdict. *State v. Fears,* 803 S.W.2d 605, 607 (Mo. banc 1991). Where, as here, some of the issues on appeal were not preserved below, those issues are reviewed for plain error, which requires a finding that manifest injustice or a miscarriage of justice has resulted. *State v. Glass,* 136 S.W.3d 496, 507 (Mo. banc 2004).

## III. THE CONFRONTATION CLAUSE IS NOT IMPLICATED WHERE THE WITNESS WHOSE PRIOR STATEMENTS ARE ADMITTED IS AVAILABLE FOR CROSS–EXAMINATION

Mr. Perry challenges the constitutionality of section 491.075. He argues it permits introduction of statements of a child witness made prior to trial if the trial court finds those statements are reliable and certain other requirements are met; therefore, section 491.075 violates the Confrontation Clause as set out in the Sixth Amendment to the United States Constitution and as interpreted in *Crawford,* 541 U.S. 36, 124 S.Ct. 1354, even if, as here, the witness testifies at trial and is subject to cross-examination.

The Sixth Amendment states that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *See also* Mo. Const. art. I, sec. 18(a) ("in criminal prosecutions the accused shall have the right to . . . meet the witnesses against him face to face.") As this Court noted in

*State v. Justus,* 205 S.W.3d 872, 878 (Mo. banc 2006), *Crawford* and its successors "established a new framework for addressing a criminal defendant's confrontation rights under the Sixth Amendment." Where a witness is absent from trial, prior *testimonial* statements are admissible "only where the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine." *Crawford,* 541 U.S. at 59, 124 S.Ct. 1354.[3] But, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n. 9, 124 S.Ct. 1354. The *Crawford* standard reflects the Confrontation Clause's ultimate goal of ensuring reliability of evidence: by testing it in the crucible of cross-examination. *Id.* at 61, 124 S.Ct. 1354.

Mr. Perry argues that section 491.075 is unconstitutional both facially and as applied to him. It is against the standard set out in *Crawford* and its progeny that these arguments are to be assessed. Section 491.075 provides in relevant part:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

---

**3.** This Court's opinion in *Justus,* 205 S.W.3d at 879–880, explains in detail the difference between testimonial and non-testimonial statements, and that discussion will not be repeated here.

(2) (a) The child testifies at the proceedings; or

(b) The child is unavailable as a witness; or

(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

**Sec. 491.075.1.**

■■ To the extent that Mr. Perry is making a facial challenge to the constitutionality of section 491.075, his challenge clearly fails. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

*Crawford* specifically states that prior testimonial statements are admissible if the witness is unavailable and if the person has been subject to prior cross-examination, or if the prior statements are non-testimonial. As this Court noted in *Justus,* 205 S.W.3d at 881, section 491.075(b) clearly is consistent with the Confrontation Clause to the extent that it permits introduction of non-testimonial statements, such as the statements made to Mother and Stepfather here prior to the involvement of the police, or to the extent it permits introduction of statements as to which prior cross-examination was available. *Crawford,* 541 U.S. at 59, 124 S.Ct. 1354. Further, *Crawford* expressly states that "when

the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n. 9, 124 S.Ct. 1354. Section 491.075 permits introduction of child witness statements in all of these circumstances. As there are circumstances in which section 491.075 can be applied constitutionally, it is not facially invalid.

■ Neither is the statute invalid as applied to Mr. Perry. As noted, Victim did testify in this case. Thus, the only portion of section 491.075 that is relevant here is that which governs admission of prior statements where a child witness testifies at the proceeding. Under section 491.075.1(1) and (2)(a), a prior statement of a testifying child witness is "admissible as substantive evidence to prove the truth of the matter asserted," **sec. 491.075.1(1),** if it presents "sufficient indicia of reliability", **sec. 491.075.1(2).**

Mr. Perry focuses on the fact that section 491.075.1 requires that a statement have sufficient indicia of reliability to be admitted and suggests that, even though *Crawford* says that the Confrontation Clause is not implicated where the witness is available for cross-examination at trial, the reference to "indicia of reliability" violates the Confrontation Clause because *Crawford* disapproved *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which in turn had said admissibility under the Confrontation Clause turns solely on whether testimony meets certain indicia of reliability.

While Mr. Perry is correct that *Roberts* is no longer the law in regard to whether prior testimonial statements are admissible under the Confrontation Clause,[4] if the

4. The *Roberts* test conditioned the admissibility of all hearsay evidence on whether it falls under a "firmly rooted hearsay exception" or

bears "particularized guarantees of trust-worthiness." *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531. Because the Supreme Court found this

Confrontation Clause otherwise is satisfied or not implicated, there is no bar to section 491.075 additionally requiring that evidence also must satisfy the hearsay rule or show other indicia of reliability to be admitted. The exception applied here permits introduction of prior statements of a child witness if the witness testifies at trial and if the court finds that sufficient indicia of reliability are present. **Sec. 491.075.1(2)**. As *Crawford* notes, in such a circumstance there is no Confrontation Clause violation. 541 U.S. at 59 n. 9, 68, 124 S.Ct. 1354. Because the Victim was present at trial, if her testimony was subject to cross-examination and met the necessary indicia of reliability under section 491.075.1(2), it was admissible.

Mr. Perry alternatively argues that, even if the Confrontation Clause is not implicated where he has an opportunity to cross-examine the witness, his opportunity to cross-examination Victim was not meaningful because Victim did not repeat at trial the key allegation that, after he put his foot under her nightgown, he rubbed it in a circular fashion on her vagina.

■■■ While a meaningful opportunity for cross-examination is necessary, "the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Owens*, 484 U.S. 554, 557, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (Court holding Confrontation Clause not violated by witness's loss of memory at trial). It has long been the law that the prosecution may rely on out-of-court statements concerning the crime as substantive evidence. *See Glass v. State*, 227 S.W.3d 463, 472 (Mo. banc 2007). When this occurs, the

defense can bring out the fact that the witness has not repeated certain of his or her prior statements at trial as a fact in defendant's favor, going to credibility. *See Maryland v. Craig*, 497 U.S. 836, 851, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) ("elements of effective confrontation not only permit a defendant to confound and undo the false accuser, or reveal the child coached by a malevolent adult, but may well aid a defendant in eliciting favorable testimony from the child witness").

Mr. Perry had that opportunity here. Victim did not simply sit silent on the stand. While she was reluctant to testify at first, after some preliminary questioning and a break, she did repeat most of her allegations, including the allegation that the defendant placed his foot underneath her nightgown and that what he did made her feel bad. Victim was subjected to cross-examination, during which defense counsel had the opportunity to bring out such matters as any possible motivation of Victim to fabricate a story, possible influences on Victim's statement, or to question her about why she did not repeat her prior specific description and to argue to the jury that her failure to do so negated its credibility. While no doubt defense counsel had to weigh his desire to engage in such questioning with his desire not to bully a child witness and not to repeat her most damning allegations, this is the type of strategy decision that occurs in any cross-examination. In the end, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witnesses' demeanor [all contribute to satisfying] the constitutional requirements." *California v. Green*, 399

"test allow[ed] a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability," it failed

the test in *Crawford*, 541 U.S. at 62, 124 S.Ct. 1354.

U.S. 149, 158–161, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).[5]

## IV. UNPRESERVED OBJECTIONS TO CLOSING ARGUMENT DID NOT REQUIRE A NEW TRIAL

Mr. Perry next argues that the court plainly erred in failing, *sua sponte*, to interrupt the prosecutor's closing argument to strike certain statements the prosecutor made concerning defendant's conduct that, Mr. Perry asserts, implied the prosecutor had special knowledge and that were improper and highly prejudicial.

 Plain error relief seldom is granted on assertions of error relating to closing arguments because absence of an objection and request for relief during closing arguments mean that any intervention by the trial court would have been uninvited and may have caused increased error. *See State v. Silvey*, 894 S.W.2d 662, 670 (Mo. banc 1995). Indeed, the failure of defense counsel to object to improper argument is often strategic in nature, and the taking of uninvited action by the court in such a case simply may emphasize the matter in a way defendant chose not to do. *See State v. Cole*, 71 S.W.3d 163, 171 (Mo. banc 2002) (failure to object is often strategic).

 For these reasons, an appellate court will only reverse for unobjected-to error in closing argument if defendant shows "there is a sound, substantial manifestation, a strong, clear showing, that injustice or miscarriage of justice will re-

sult if relief is not given." *State v. Wood*, 719 S.W.2d 756, 759 (Mo. banc 1986). Defendant bears the burden of proving the "improper argument ... had a decisive effect on the jury's determination." *State v. Wren*, 643 S.W.2d 800, 802 (Mo. banc 1983).

Here, the prosecutor was arguing why the jury should convict the defendant of first-degree child molestation. The prosecutor was permitted to argue that the evidence or reasonable inferences from the evidence showed that defendant was guilty of child molestation, which the instructions defined as a touching of "the genitals of [Victim] through the clothing ... for the purpose of arousing or gratifying his own sexual desire ...." He had to show that the touching was sexually motivated to make his case. It was in this context that he argued:

Also, [Victim] told you that he—and on the DVD, that he also, at one point, rubbed himself. She showed you with stuffed animals, rubbed himself on her abdomen. She showed the demonstration of how he did it.

You notice in the corner of that video, you couldn't really see her, but she was doing that, she was moving her hips around. That also points to why the defendant was touching her. Take his actions as a whole and look at everything he did to her.

Now, look, a sexual predator is not going to immediately started with a rape. They're going to start small and see what they can get away with.

---

5. Mr. Perry argues in the alternative that Victim's out-of-court statements still lacks "sufficient indicia of reliability." The trial court held a hearing and determined the hearsay statements possessed sufficient indicia of reliability. A trial court has broad discretion to admit or exclude evidence at trial. The decision to admit the evidence will only be reversed when the trial court has abused its

discretion. *State v. Fears*, 217 S.W.3d 323, 327 (Mo.App. S.D.2007). The objections raised by Mr. Perry—he suggests that Mother and the forensic examiner pushed Victim to identify him—go to weight and credibility. This Court finds the trial court did not abuse its discretion in admitting the videotaped interview pursuant to section 491.075.

That's why he started with his foot to that vagina.

You heard [victim] say how it made her feel. It made her feel horrible. This was a bad touch in the wrong spot. This was a touch done by a child molester.

This man was grooming [victim] for something bigger. This was a touch that was sexually motivated."

■■■■ The first comment that Mr. Perry objects to is that the prosecutor said, "This was a touch done by a child molester." Of course, Mr. Perry was charged with child molestation, and the whole premise of the prosecution was that Mr. Perry's touch was done by a child molester and for the purpose of sexual gratification. There was no error, plain or otherwise, in making this argument. The prosecutor is allowed to make arguments based on facts in evidence. *Norfolk & W. Ry. Co. v. Greening*, 458 S.W.2d 268, 273 (Mo.1970).

■■■ Mr. Perry also objects to the statements that he was "grooming" Victim for something bigger. Mr. Perry suggests that the term "grooming" can have a special meaning in the context of sexual predator prosecutions and can mean a behavioral characteristic that describes a predator's conduct of establishing physical and psychological closeness with their child victims through affection, praise, gift giving and rewards, and that, by so arguing, the prosecutor improperly was suggesting that he had special knowledge outside that possessed by the jury. *See State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995) ("A prosecutor may not argue facts outside the record").

But here, the prosecutor did not suggest that the word "grooming" was being used in some technical sense, and the jury was never told to give any specialized meaning

to the term. Whether the word was unduly inflammatory, therefore, must be judged in the context of the word's normally understood meaning, which is "[t]o get into readiness for some specific objective." **Webster's Third New Int'l. Dictionary, 1001 (3rd ed.1993).** The prosecutor argued that, by first rubbing himself on the victim and then touching her vagina through her clothes with his foot, Mr. Perry was getting in readiness for some specific other objective.

There is nothing inherently inflammatory or prejudicial about this argument in the context of a child molestation case such as this. The only prejudice that Mr. Perry specifically identifies is concern that the jury might believe the prosecutor had some special knowledge, unknown to the jury, of what Mr. Perry intended to do.

But here, there was no suggestion that the prosecutor based the grooming statement on outside knowledge, rather than on the evidence that Mr. Perry first sat on Victim's abdomen and rubbed himself on her, and a few days or weeks later, put his foot under her nightgown and began rubbing it in circles on her vagina in a way that made her uncomfortable and made her feel horrible. The prosecutor argued that it was from this evidence that the jury could draw the inference that Mr. Perry was "grooming" her for something bigger. While the jury certainly need not have agreed with the prosecutor's statement, it was neither inherently inflammatory nor did it hint that the prosecutor had special knowledge. It does not present a basis for finding plain error.

■■■ Finally, Mr. Perry argues that the prosecutor's use of the term "sexual predator" constituted plain error. This comment is far more troublesome, for Mr. Perry had not been found to be a sexual predator nor would the offense for which he was on trial qualify him automatically

as one were he convicted. The State argues that it was drawing a fair inference from the record that because he had increased the level of sexual contact from rubbing generally to rubbing Victim's vagina, he planned to go further. It further notes that the prosecutor did not suggest that he had any additional information, other than that presented to the jury, to support the sexual predator comment.

It is true that nothing in the prosecutor's comments suggests that he had inside or unrevealed information that Mr. Perry was a sexual predator, and that the prosecution instead argued that the evidence presented could support this inference. This makes use of the term less concerning than it otherwise would be. Nonetheless, it called for the jury to speculate as to what Mr. Perry might become in the future in deciding his guilt, rather than deciding his guilt of the crime for which he was charged. Further, the term is inherently pejorative, even when used in a nontechnical sense as it was here.[6] The prejudicial effect of the statement outweighed any minimal probative value the comment might have had, and had an objection been made to the comment, it should have been sustained. *See State v. Whitfield,* 837 S.W.2d 503, 513 (Mo. banc 1992).

Here, however, counsel did not object to the comment. Mr. Perry, therefore, is left with the much more difficult argument that counsel's failure to object was unreasonable, and the court's failure, *sua sponte,* to interrupt the prosecutor, strike the comment and direct the jury to disregard it was plain error.

To succeed in this argument, Mr. Perry bears the burden of proving the single, unobjected-to reference to "sexual predators" had such "a decisive effect on the jury's determination" *State v. Wren,* 643 S.W.2d 800, 802 (Mo. banc 1983), that in itself it constitutes plain error and requires reversal and remand for a new trial. In support, he cites *Whitfield* and *Kellogg v. Skon,* 176 F.3d 447 (8th Cir.1999). Neither supports reversal for the argument made here.

In *Whitfield,* the prosecutor referred to the defendant as a "mass murderer" four times and as a "serial killer" three times throughout his closing argument. Defense counsel objected to the closing argument because no evidence suggested the defendant's prior homicides were of this character. *Whitfield,* 837 S.W.2d at 513. The Court found these statements inflammatory but did not rule on the decisive issue of whether these statements constituted reversible error, as it reversed on other grounds. *See id.* ("Because this case is reversed on other grounds, this Court need not determine the prejudice here").

Here, unlike in *Whitfield,* the statements were not objected to, and Mr. Perry has offered nothing to support his assertion that the jury might have thought the prosecutor based his comments on special knowledge rather than on inferences from the evidence.

In *Kellogg,* the prosecutor referred to the defendant as a "monster," a "sexual deviant" and a "liar." 176 F.3d at 451. The Eighth Circuit made clear that these statements were a "foul blow," "abhorrent" and "misconduct." But the Eighth Circuit

---

**6.** The dictionary does not define the term "sexual predator." But the terms "predator" or "predatory" refer to either "one that preys, destroys, or devours" or one "disposed or showing disposition to injure or exploit others for one's own gain." **Webster's Third New** **Int'l. Dictionary, 1785 (3rd ed.1993).** When read with the grammatical modifier "sexual", the term refers to a person that either sexually preys on or is disposed or shows a disposition to sexually exploit others.

nonetheless held that it could not say that the statements rendered the entire trial fundamentally unfair, concluding that the "weight of the evidence was heavy, and there is no reasonable probability that the verdict would have changed absent the comments, even considering the cumulative effect of the prosecutor's remarks." *Id.* at 452.

A similar result was reached in *State v. Wood*, 719 S.W.2d 756, 759 (Mo. banc 1986). There, the prosecutor referred to the defendant as an "animal." On appeal, this Court recognized the improper nature of the argument but declined to grant a new trial because "[r]elief should be rarely granted on assertion of *plain error* to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explication." *Id.; See also State v. Silvey*, 894 S.W.2d 662, 670 (Mo. banc 1995) (Court refused to review prosecutor's argument that the defense had been telling the jury half a story all along because "plain error review 'should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review' " (citation omitted)).

Applying these principles here does not require reversal. None of the statements now complained of suggested special knowledge on the part of the prosecution. Rather, in context, it was clear that the prosecutor was asking the jury to draw the inference from the evidence presented that Mr. Perry was a child molester who was grooming Victim for something bigger. He did not argue Mr. Perry was now a sexual predator but certainly suggested that he might become one. Basically, he was arguing, based on the evidence, that the jury should stop Mr. Perry now before he went further. This argument was inappropriate due to the use of the words "sexual predator," but in light of the singular nature of the reference, the lack of suggestion of outside knowledge, and counsel's failure to object the Court cannot say that the trial court committed plain error in failing, *sua sponte*, to interrupt closing argument and draw attention to the statement by striking it and admonishing the jury to disregard it. Mr. Perry has failed to show that this error decisively affected the jury's determination sufficiently to deny him a fair trial.

## V. SUFFICIENCY OF THE EVIDENCE

Finally, Mr. Perry argues the trial court erroneously overruled his motion for judgment of acquittal at the close of the evidence because the evidence was insufficient to support a guilty verdict. He asserts the state failed to prove beyond a reasonable doubt that he touched Victim for the purpose of arousing or gratifying sexual desire because no evidence was presented showing he had either a verbal or physical reaction to the contact.

Generally, "in assessing whether a touching is for the purpose of arousing or gratifying sexual desire rather than being an innocent touching, a fact-finder looks at the circumstances of the particular case." *State v. Morton*, 229 S.W.3d 626, 630 (Mo.App. S.D.2007). Since the purpose of an actor's action must be determined from his mental state, and because direct evidence of a person's mental state is rarely available, the actor's mental state will often rest on circumstantial evidence and permissible inferences. *Id.*

Here, there was evidence from Victim, both at trial and in her pretrial statements to Mother, Stepfather and the forensic interviewer that showed Mr. Perry had engaged in sexual contact. Sometime after the incident, Victim told Mother and Stepfather that Mr. Perry had touched her

vagina with his foot. Further, during the videotaped interview with the forensic interviewer, Victim discussed how Mr. Perry had touched her with his foot under her nightgown through her underwear. She also described how he had rubbed her vagina in a circular motion.

Mr. Perry asserts the contact was innocent and was not intended "for the purpose of arousing or gratifying sexual desire." He claims to have been awakened from sleep by Victim moving up and down on his foot. In support, he notes that he had a conversation with Stepfather about the contact and told Stepfather he was uncomfortable with it.

The jury could have believed Mr. Perry's explanations, but it did not have to do so. His behavior in hiding the conduct by fabricating a story and admitting something had happened that he thought was sexual shows he was aware of the inappropriate nature of the contact. The jury reasonably could have found that his attempted explanation false and that the false story showed consciousness of guilt rather than innocence. In light of Victim's testimony and her consistent telling of the story, a reasonable juror could have found Mr. Perry guilty of first-degree child molestation beyond a reasonable doubt.

## VI. CONCLUSION

Section 491.075 is constitutional on its face and as applied in the case of a child witness who testifies and is available for cross-examination at trial. The Confrontation Clause simply is not implicated in such circumstances. The trial court did not plainly err in failing, *sua sponte*, to interrupt closing argument to strike certain of the prosecutor's statements and direct the jury to disregard them. The evidence was sufficient to support the jury's finding that Mr. Perry was guilty of first-degree child molestation. Accordingly, the judgment is affirmed.

PRICE, TEITELMAN, RUSSELL, WOLFF, and BRECKENRIDGE, JJ., and MALONEY, Sp.J., concur. FISCHER, J., not participating.