

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD81946** |
| | ) | |
| **v.** | ) | **OPINION FILED:  April 14, 2020** |
| | ) | |
| **FRANK G. HAWKINS,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Patrick K. Robb, Judge

Before Division One:  Lisa White Hardwick, Presiding Judge, Cynthia L. Martin, Judge
and Thomas N. Chapman, Judge

Frank G. Hawkins ("Hawkins") appeals his conviction of sodomy in the first degree

with a victim less than 12 years old in violation of section 566.060.[1]  Hawkins contends

that the trial court erred in admitting out-of-court statements of a child victim ("Victim")

offered by multiple witnesses in violation of section 491.075 and Hawkins's Sixth

Amendment right to confront his accusers.  Finding no error, we affirm.

---

[1]All statutory references are to RSMo 2016 as applicable on the date of the offense.

**Factual and Procedural Background[2]**

Hawkins lived with Victim's grandmother. Victim often visited her grandmother's house where Hawkins would take care of Victim.

In June 2017, several weeks after a visit to Victim's grandmother's house, Victim disclosed to her mother ("Mother") that Hawkins touched her "privates" and "put something inside of her and it hurt." Victim told Mother this happened more than once. The same day, Victim's father ("Father") came home from work and Victim repeated the disclosure. Victim was taken to the hospital and the police were contacted. Several days later, Victim told Mother that Hawkins would take her to get ice cream if she let Hawkins touch her inappropriately.

During a recorded interview at the Northwest Missouri Children's Advocacy Center, Victim disclosed to Trenny Wilson ("Wilson"), a forensic interviewer, that Hawkins had touched Victim inside her vagina while she visited her grandmother's home. This touching would occur in the kitchen and the living room, and was preceded by Hawkins showing Victim pornography on his phone. During therapy sessions, Victim repeated these disclosures to Wendy Hickman ("Hickman"), a therapist at the Young Women's Christian Association.

On March 14, 2018, Hawkins was charged with sodomy in the first degree as a prior and persistent offender for acts committed against a victim under the age of 12 in January and May of 2017.[3]

---

[2] We view the evidence in the light most favorable to the jury verdict, disregarding all contrary evidence and inferences. *State v. Brand*, 309 S.W.3d 887, 890 n. 2 (Mo. App. W.D. 2010).

[3] Ultimately, the jury was only instructed on the acts committed during May of 2017.

On March 29, 2018, pursuant to section 491.075.1(1), the trial court held a hearing to determine the admissibility of statements made by Victim, who was three years old on the date of the charged offenses, to her parents regarding the criminal acts committed by Hawkins. The trial court also considered the admissibility of statements made to Wilson and Hickman.

On May 1, 2018, the trial court entered an order finding that "the content and circumstances" of the statements made by Victim indicated they were "sufficiently reliable to allow for their admissibility at trial." The trial court required the Victim to testify at trial "as a foundation for the admissibility" of Victim's out-of-court statements.

A jury trial was held. During the State's case-in-chief, Victim, who was four years old at the time of trial, was called to the stand, sworn under oath to testify truthfully, and testified as provided:

State: Can you tell us your name? Do you remember this? Look, come over here.

Victim: I don't want to.

State: I know you don't want to. Can you tell us your name?

Victim: I don't want to.

State: We need to know. What's your name? See that? Do you want to go draw me a picture? [Victim]? [Victim], look at me? Remember? Tell me your name. You can do it. Can you tell me your name?

Victim: I don't want to.

State: I know you can. How old are you? How old are you?

Victim: I don't want to.

3

State:   Do you want to go draw me a picture?  Okay. . .   Your honor, may we approach the whiteboard?

Court:  Yes.

State: [Victim], can you draw me a picture?  Can you draw me a picture of you? Did something happen to you that you didn't like?  Did somebody touch you somewhere that they weren't supposed to?  Can you draw me a picture of that?  What did he do or what did that person do?  What part of your body is he touching?  It's okay.  It's just me and you.  What part of the body is that? Who is this?  Who is that?  Who is that?

Victim:  I don't want to.

State:  I know you don't want to.  Did you look around the courtroom?  Did you look around?  Did you see the person that did this to you?

Victim:  (Nods head).

State: Yeah? Is he here today?  Is that "Yes" or "No"?  Is he here?  I saw you shake your head, but what did that mean?  Is that "Yes" or "No"?

Victim:  (Nods head).

State:  You're shaking your head "Yes"?

Victim:  (Nods head).

State:  You see him now?

. . .

State:  I want to show you another picture.  Okay?  Can you go back over there with me?  Come on.  It's okay, just me and you.  Come on.  Do you want to go that way?  Don't fall.  Okay.  I'm going to meet you over there. Here's your coin.
. . .

State:  I'm going to show you this picture and it's got the No. 2 on it.  Doesn't it?  Can you show me on this picture where someone touched you?

Victim:  (Indicating).

State: There? What do you call that? Can you tell us what you call that?

Victim: (Shakes head).

State: No? [Victim], just one more question and I need you to answer for me. Okay? What's the name of the person that touched you there? And then I won't have any more questions. Can you tell us his name or her name? Then I'll be all done. Do you see him?

Victim: (Nods head).

Hawkins cross-examined Victim, as provided:

Defense: Hi, [Victim]. How are you? Are you good today? Have you got a coin? Is that money? [Victim], did the Easter bunny come see you?

Victim: (Nods head).

Defense: Did you come into the courtroom the other day? Did you practice going through this with [the State]?

Victim: (Shakes head).

Defense: You didn't? Did you get candy? Did you get candy when you came in the other night?

Victim: (Shakes head).

Defense: No? Is that money?

Victim: (Shakes head).

Defense: No? You can't spend it? So have you come in the courtroom here before?

Victim: (Shakes head).

Defense: You didn't? Can you talk to me?

Victim: (Shakes head).

Defense: No? Okay. Did the Easter bunny bring you lots of candy?

5

Victim: (Nods head).

Defense: He did? A big basket this year?

Victim: (Nods head).

Defense: And you got lots of candy in there? And when you came up to the courthouse, did you come in this room? No? Do you want to be done?

Victim: (Nods head).

Defense: You do? Okay.

The State returned for a brief redirect examination and asked Victim to point at the perpetrator who touched her, but Victim did not respond. At the conclusion of the Victim's testimony, the trial court ordered that a photograph of Victim's drawing on the whiteboard be included in evidence. In addition to Victim's testimony, Victim's parents, Hickman, and Wilson testified as to what Victim disclosed to them regarding Hawkins's abusive conduct.

The jury found Hawkins guilty of sodomy in the first degree. Hawkins was sentenced to life imprisonment. This timely appeal follows.

## Analysis

Hawkins raises two points on appeal. Hawkins's first point argues that the trial court erred by admitting into evidence Victim's out-of-court statements made to her parents, Wilson, and Hickman because Victim failed to sufficiently "testify" for purposes of complying with section 491.075. Hawkins's second point argues that the trial court erred by admitting Victim's video-taped interview with Wilson in violation of his right to effectively confront and cross-examine Victim under the Sixth Amendment and Missouri Constitution Article I, section 18(a), because Hawkins was not afforded an opportunity for

6

effective cross-examination when Victim failed to sufficiently testify. Before addressing Hawkins's points collectively, we first discuss the admission of out-of-court statements by a child witness under section 491.075 within the context of the Confrontation Clause.

## The Confrontation Clause and Section 491.075

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI.[4] The Supreme Court of the United States has interpreted the Confrontation Clause as establishing limits on the use of prior out-of-court statements made by accusers when those statements are "testimonial" in nature. *See Crawford v. Washington*, 541 U.S. 36, 52 (2004). In limiting these testimonial out-of-court statements, the Court has reasoned that "an accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not," and those "testimonial" statements must be tested in the "crucible of cross-examination." *Id*. at 51 and 61.[5] The Court has concluded that certain prior testimonial statements, such as out-of-court witness statements, are inadmissible at trial unless "the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* 59. "When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior testimonial statements." *Id.* at 59 n. 9; *see also State v. Perry*, 275 S.W.3d 237, 242 (Mo. banc 2009); *State v. Biggs*, 333 S.W.3d 472, 477 (Mo. banc 2011).

---

[4]"The protections provided by Section 18(a) of the Missouri Constitution are coextensive with those of the Sixth Amendment." *State v. Campbell*, WD82209, 2020 WL 620478 *3 n.3, -- S.W.3d --- (Mo. App. W.D. 2020).
[5]Neither party contends that the statements at issue in this case are not testimonial in nature.

Section 491.075 governs the admissibility of out-of-court statements made by child witnesses. Section 491.075 provides that a child's, otherwise inadmissible, out-of-court statement made in relation to an offense under Chapter 566 is admissible to prove the truth of the matter asserted when:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)     (a) The child or vulnerable person testifies at the proceedings; or

(b) The child or vulnerable person is unavailable as a witness; or

(c) The child or vulnerable person is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child or vulnerable person unavailable as a witness at the time of the criminal proceeding.

Section 491.075.1. Our courts have repeatedly held that "admitting a child-victim's out-of-court statements in evidence pursuant to section 491.075 *is not a violation* of due process, equal protection of the law or the right to confrontation under the United States Constitution *in a case in which the victim is available and produced at trial.*" *State v. Hester*, 801 S.W.2d 695, 697 (Mo. banc 1991) (citing *State v. Wright*, 751 S.W.2d 48, 51 (Mo. banc 1988)); *see also State v. Justus*, 205 S.W.3d 872, 881 (Mo. banc 2006); *Perry*, 275 S.W.3d at 243; *Biggs*, 333 S.W.3d at 477-78.

Thus, the central issue underlying both of Hawkins's points relied on is whether Victim was available and produced at trial for purposes of testimony.

## Points One and Two

In his first point on appeal, Hawkins argues that a victim witness must "actually give verbal answers to questions" in order to satisfactorily testify under section 491.075.1(2). He asserts that Victim's multiple non-verbal responses during her testimony rendered her "unavailable," for purposes of section 491.075, thus denying him the opportunity for effective cross-examination.[6] We disagree.

We review a trial court's decision to admit testimony involving an out-of-court statement for an abuse of discretion. *Justus*, 205 S.W.3d at 878. "A trial court has broad discretion to admit or exclude evidence at trial." *Perry*, 275 S.W.3d at 245 n.5. We will only reverse the trial court's decision when the trial court abuses its discretion. *Id.*

---

[6]Hawkins's first point additionally asserts that sections 491.075, which governs the admissibility of a child's out-of-court statement for the truth of the matter asserted in cases relating to certain offenses, and 491.070, which recognizes the right of parties to cross-examine witnesses, create a liberty interest under the Fourteenth Amendment and article I, section 10 of the Missouri Constitution. Hawkins further asserts this liberty interest requires a child witness to "actually testify verbally for a defendant to be afforded the opportunity for effective cross-examination."

Hawkins has failed to preserve this argument for our review. "The defendant is bound by the arguments made and the issues raised at trial and may not raise new and totally different arguments on appeal." *State v. Hindman*, 446 S.W.3d 683, 686 n.3 (Mo. App. W.D. 2014). "To preserve constitutional claims of errors for appellate review, they must be raised at the first opportunity with citations to specific constitutional sections." *State v. Tisius*, 362 S.W.3d 398, 405 (Mo. banc 2012). Nothing in the record reflects that Hawkins argued at any point during the prior proceedings that the admission of Victim's out-of-court statements as made to Victim's parents, Wilson or Hickman violated a liberty interest. "On appeal, a defendant may not broaden the objection presented to the circuit court." *Id.* Hawkins's failure to make a specific argument relating to a liberty interest established by sections 491.075 and 491.070 in any objection or in his post-verdict motion for a new trial deprived the trial court of an opportunity to sufficiently consider and rule on the issue. Thus, this portion of Hawkins's argument is entitled, at most, to our plain error review, to determine whether the trial court committed a manifest injustice by admitting the statements in violation of an alleged liberty interest. *See* Rule 30.20; *State v. Webb*, 569 S.W.3d 530, 544 (Mo. App. W.D. 2018); *State v. Driskill*, 459 S.W.3d 412, 426 (Mo. banc 2015). Hawkins fails to direct this court to any case law, and this court is aware of none, that recognizes a liberty interest under the Fourteenth Amendment, as established by section 491.075 or 491.070. Absent any clear, evident or obvious liberty interest under the Fourteenth Amendment, the trial court did not plainly error in violation of Hawkins's due process rights when it admitted the testimony of Victim's parents, Wilson, and Hickman. *See State v. Tanner*, 220 S.W.3d 880, 884 (Mo. App. S.D. 2007). We nonetheless consider the arguments included under Hawkins's first point insofar as they are preserved relating to a violation of section 491.075.

Victim was available and produced at trial, and testified in a manner consistent with section 491.075's requirements. In *State v. Hester*, our Supreme Court held for purposes of section 491.075, a child victim witness is "unavailable" when "shown to be (1) deceased, (2) beyond the reach of process, (3) insane or physically ill; (4) kept away by the connivance, collusion or consent of the other party; or (5) where due diligence to secure the witness's attendance by compulsory process has failed." *Hester*, 801 S.W.2d at 696. The *Hester* Court found that a child witness was available even though the witness only "answered two or three questions [asked by the prosecution], then failed to respond to additional questions," before being excused by the court. *Id.* The Court remarked it was significant that "[d]efense counsel did not insist that the child answer the prosecutor's questions and made no attempt to cross-examine the child." *Id.* Additionally, the court found it significant that defense counsel sought no determination that the child victim witness was unavailable for purposes of section 491.075. *Id.*

Here, the testimony of Victim was more substantive than the witness in *Hester* and, unlike in *Hester*, Hawkins did cross-examine Victim. Victim took the stand, was sworn-in to testify, and was questioned by both State and Hawkins. On direct examination, Victim drew a picture on a whiteboard indicating where she was touched inappropriately and acknowledged that the individual who touched her was in the courtroom. On cross-examination, Victim indicated that she had not rehearsed her testimony with the State; that she had been given a coin, but had no money to spend; and was visited by the Easter Bunny who gave her candy. Victim also responded that she no longer wanted to testify. Hawkins's cross-examination was not restricted by the trial court, nor did Hawkins request to take a

break and continue questioning Victim after Victim indicated that she did not want to answer questions. Though the Victim did expressly state in response to a few of the questions asked of her that she did not want to answer, most of the questions posed of her by the State and by Hawkins were answered, albeit with a nonverbal response. Nonverbal responses are answers. This is simply not a case were Victim refused to answer most questions asked of her, particularly on cross-examination. *Cf. People v. Giron-Chamul*, 245 Cal.App.4th 932, 968-69 (First Dist., Div. 1 Cal. 2016) (holding that where young victim refused to answer virtually every question asked of her, she could not be deemed available for cross-examination, and summarizing other cases involving similar facts, though not always reaching the same conclusion). Cases of this nature "suggest a continuum on which the right to an opportunity for effective cross-examination is more likely violated as the number of relevant questions that go unanswered increases." *Id*. at 968. The facts and circumstances in this case fall along the continuum at a point supporting the conclusion that Victim was available to testify and subject to cross-examination. While Victim was a reluctant witness, as any child victim witness might be in such a circumstance, "reluctance to testify is not the equivalent of unavailability to testify." *Hester*, 801 S.W.2d at 697; *See also State v. Galindo*, 973 S.W.2d 574, 579 (Mo. App. S.D. 1998) (holding that there was no error to admit a child victim's out-of-court statements when the victim mostly provided non-verbal testimony in response to direct and cross-examination); *State v. Tanner*, 220 S.W.3d 880, 886 (Mo. App. S.D. 2007) (holding that a reluctant witness testified even though cross-examination yield little substantive testimony). Importantly, Hawkins never requested the court find Victim unavailable, as

11

provided in 491.075.2(c) or for any other reason as identified in *Hester*. Hawkins's true complaint is that Victim's testimony was unsatisfactory, but "the fact that a witness's testimony is unsatisfactory does not render the witness unavailable." *Biggs*, 333 S.W.3d at 477. Because the trial court complied with section 491.075's requirements, and Victim was made available to testify, was cross-examined, and Hawkins never sought a determination that Victim was unavailable, the trial court did not err in admitting Victim's out-of-court statements.

Hawkins first point is denied.

Hawkins's second point asserts that because Victim did not testify in satisfaction of section 491.075's requirements, Hawkins's constitutional rights were violated by the admission of the Victim's recorded interview with Wilson. Because we have already resolved the issue whether Victim was available and testified in accordance with section 491.075, Hawkins's second point also fails. "If . . . [a] declarant testifies at trial, there are no constraints on the use of [her] testimonial statements" for purposes of the Confrontational Clause. *Biggs*, 333 S.W.3d 477. The trial court's admission of Victim's out-of-court statements in evidence pursuant to section 491.075 "is not a violation of due process, equal protection of the law or the right to confrontation under the United States Constitution[.]" *Hester*, 801 S.W.2d at 697. "In the end, 'the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witnesses' demeanor [all contribute to satisfying] the constitutional requirements.'" *Perry*, 275 S.W.3d at 244-45 (citing *California v. Green*, 399 U.S. 149, 158-61 (1970)). "While a meaningful opportunity for cross-examination is necessary, 'the Confrontational Clause guarantees

12

only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish.'" *Id.* at 245 (citing *United States v. Owen*, 484 U.S. 554, 557 (1988)).

Hawkins's second point is denied.

## Conclusion

The trial court Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

13