

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD85840 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | MARCH 5, 2024 |
| BRAYON J. WILLIAMS, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Adair County, Missouri**
The Honorable Thomas P. Redington, Judge

Before Special Division: Gary D. Witt, Chief Judge, Presiding, Cynthia L. Martin, Judge
and James E. Welsh, Special Judge

Brayon Williams ("Williams") appeals the judgment of the Circuit Court of Adair

County, Missouri ("trial court"), convicting him, after a bench trial, of one count of

possession of a controlled substance, section 579.015.[1] On appeal, Williams claims that

the trial court erred in: (1) entering his conviction in that section 195.205 protects

persons subject to a good faith request for medical assistance for a drug or alcohol

overdose from prosecution for possession of a controlled substance; and (2) admitting

---

[1] All statutory references are to the Revised Statutes of Missouri (2016), as
updated by supplement, unless otherwise noted.

certain evidence at his trial because the evidence was not seized pursuant to jailhouse

procedures and was not part of a proper inventory search.  We affirm the judgment of the

trial court.

**Factual and Procedural Background[2]**

On February 29, 2020, a Kirksville police officer ("Officer 1")[3] was dispatched to

a Hy-Vee gas station because a gas station employee had called the non-emergency

police line to report that someone was locked in the men's restroom, the person was

unresponsive to knocks on the door, and the employee just wanted the person to leave.

When Officer 1 arrived at the gas station the clerk informed her that the bathroom door

had been locked for over an hour, and another customer needed to use the bathroom, but

whoever was inside was not responding.  Officer 1 was given the key to the restroom,

Officer 2 arrived on the scene to assist Officer 1.  Officer 1 knocked loudly on the door to

the men's room and announced herself as a police officer; there was no response.  The

officers let themselves in with the key and found Williams slumped forward, fully

clothed, and sitting on the toilet; he awoke when they entered the men's room.  Officer 1

recognized Williams, whom she knew to be homeless, from other recent interactions.

Williams seemed "dazed and confused," and his eyes were glassy and bloodshot; his

speech was slow and extremely slurred to the point of being unable to be understood at

---

[2] In a criminal case we view the evidence in the light most favorable to the verdict. *State v. Perry,* 275 S.W.3d 237, 242 (Mo. banc 2009).  We accept as true all facts and inferences favorable to the verdict and disregard evidence and inferences to the contrary. *State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009).

[3] Pursuant to section 509.520 we do not refer to witnesses by name.

times, and the officers believed Williams was heavily intoxicated. The officers got Williams up and explained that he needed to leave the restroom, but Williams was not sure if he was going into the restroom or leaving the restroom. Both officers had to assist Williams to walk out of the room because he was unsteady on his feet.

Based on their observations as to Williams's condition, the officers determined that Williams should be placed in protective custody for his safety because he was not able to care for himself. The officers conducted an inventory search of Williams pursuant to department policy when taking a person into protective custody for his safety and for their own safety. Officer 1 located an uncapped syringe in Williams's jacket pocket. The syringe had a dark reddish substance that appeared to be dried blood. Officer 1 asked what was in the syringe, and Williams answered, "More trouble." Officer 1 found in Williams's pants pocket a baggie with a small amount of a crystal-like substance she believed to be methamphetamine. A second baggie with a similar substance was found in another of Williams's pockets. The officers also found a set of brass knuckles and a stolen debit card in Williams's pockets. Williams had a backpack that the officers did not search at the scene. Officer 2 took Williams to the hospital to make sure he was fit for confinement before he was transported to the jail for his protective detention. Williams acknowledged in his testimony that the debit card, knuckles, plastic baggies, and syringe were found on his person by the officers.

The crystal substance seized from Williams during the inventory search tested positive for methamphetamine. Williams was charged with felony possession of a controlled substance for the methamphetamine, unlawful possession of a weapon for the

3

knuckles, and unlawful possession of drug paraphernalia for the syringe. The State dismissed the weapon and paraphernalia charges on its own motion and proceeded solely on the felony possession of a controlled substance for the methamphetamine. Williams, represented by counsel, filed a motion to suppress the evidence seized from his possession, claiming that the search was unlawful because the officers who conducted the search did not have reasonable grounds to believe that Williams was intoxicated, and it was not necessary for Williams to be taken into protective custody. The trial court denied the motion to suppress finding that the officers were justified in taking Williams into protective custody pursuant to section 67.315 and that their search of him was reasonable because "[t]he same inventory search procedures used when persons are placed under arrest and detained may be used when a person is being civilly detained[.]"

Williams waived his right to an attorney in writing and proceeded *pro se* at his bench trial. At the trial, when the evidence of the methamphetamine was offered into evidence, Williams stated that, while he objected to Officer 1's testimony, he had no objection to the exhibit being admitted into evidence. Williams called himself as a witness and refuted much of the officers' testimonies as to the factual events. Williams also refuted the body cam videos from the officers, claiming that they were "fraudulent" and opining that they might have been fabricated using TikTok or other software to crop his face onto someone else's body.

The trial court found Williams guilty of possessing a controlled substance and sentenced him to seven years in the Department of Corrections. This appeal follows.

4

**Analysis**

*Immunity from Conviction under section 195.205*

In his first point on appeal, Williams claims that the trial court lacked statutory authority to convict him of possession of a controlled substance because section 195.205 prohibited him from being convicted in that he was the subject of a good faith request for medical assistance and was experiencing an alcohol overdose. As the State points out, section 195.205 does not affect the trial court's *authority* but instead is an *immunity* from charges for persons whose possession of illegal substances is discovered during treatment for an alcohol or drug overdose. *See, e.g., In the Interest of J.M.W.*, 676 S.W.3d 81, 85 (Mo. App. E.D. 2023); *State v. Gill*, 642 S.W.3d 356, 359-60 (Mo. App. E.D. 2022). The Eastern District of this Court has ruled that section 195.205 immunity is an affirmative defense that the defendant must raise and prove. *Gill*, 642 S.W.3d at 361. Williams raises this issue for the first time in this appeal.

Section 195.205 became effective on August 28, 2017, and provides:

1. For purposes of this section, the following terms shall mean:
(1) **"Drug or alcohol overdose"**, a condition including, but not limited to, extreme physical illness, decreased level of consciousness, respiratory depression, coma, mania, or death which is the result of consumption or use of a controlled substance or alcohol or a substance with which the controlled substance or alcohol was combined, or that a person would reasonably believe to be a drug or alcohol overdose that requires medical assistance;
(2) **"Medical assistance"**, includes, but is not limited to, reporting a drug or alcohol overdose or other medical emergency to law enforcement, the 911 system, a poison control center, or a medical provider; assisting someone so reporting; or providing care to someone who is experiencing a drug or alcohol overdose or other medical emergency while awaiting the arrival of medical assistance.

5

2. A person who, in good faith, seeks or obtains medical assistance for someone who is experiencing a drug or alcohol overdose or other medical emergency or a person experiencing a drug or alcohol overdose or other medical emergency who seeks medical assistance for himself or herself or is the subject of a good faith request shall not be arrested, charged, prosecuted, convicted, or have his or her property subject to civil forfeiture or otherwise be penalized for the following if the evidence for the arrest, charge, prosecution, conviction, seizure, or penalty was gained as a result of seeking or obtaining medical assistance:

(1) Committing a prohibited act under section 579.015, 579.074, 579.078, or 579.105;

(2) Committing a prohibited act under section 311.310, 311.320, or 311.325;

(3) Violating a restraining order; or

(4) Violating probation or parole.

3. (1) This section shall not prohibit a police officer from arresting a person for an outstanding warrant under subsection 1 of section 221.510.

(2) This section shall not prohibit a person from being arrested, charged, or prosecuted based on an offense other than an offense under subsection 2 of this section, whether the offense arises from the same circumstances as the seeking of medical assistance.

(3) The protection of prosecution under this section for possession offenses shall not be grounds for suppression of evidence or dismissal in charges unrelated to this section.

4. Any police officer who is in contact with any person or persons in need of emergency medical assistance under this section shall provide appropriate information and resources for substance-related assistance.

Williams argues that because section 195.205 provides that a person who obtains medical assistance for a drug or alcohol overdose in response to a good faith request "shall not be arrested, charged, prosecuted, [or] convicted" he can raise the issue at any time, including after his conviction or on appeal. Interpretation of a statute is an issue of law we review *de novo*. *Gill*, 642 S.W.3d at 360. We disagree with Williams that immunity under section 195.205 may be raised for the first time on appeal. "Appellate courts are merely courts of review for trial errors, and there can be no review of a matter

6

which has not been presented to or expressly decided by the trial court." *State v. Higgs*, 649 S.W.3d 107, 117 (Mo. App. W.D. 2022). The issue, therefore, must be raised *at the very least* "before final disposition of the case whether by conviction or plea, or it is waived." *State v. Cotton*, 295 S.W.3d 487, 490 (Mo. App. E.D. 2009). This affords the State an opportunity to respond to the defense, showing that the defense does not apply or that an exception applies. *Id.* at 492. Therefore, even if the statutory language allows a defendant to raise the defense of immunity after conviction, which we do not decide in this opinion, it would at the very least need to be presented to the trial court in a post-trial motion. Although Williams brought post-trial motions before the trial court, section 195.205 immunity was not mentioned or addressed in any fashion, and the trial court did not have an opportunity to determine whether Williams was the recipient of a good faith request for medical treatment for an alcohol or drug overdose. On the contrary, at the suppression hearing, Williams argued that the police officers did not even have reasonable grounds to believe that Williams was intoxicated such that protective custody was justified. We conclude that Williams waived any argument he may have as to the application of section 195.205.

Point I is denied.

### Admission of Evidence of Methamphetamine:

Williams's second point on appeal is that the trial court plainly erred in admitting into evidence the State's Exhibit 3, the evidence of the methamphetamine found during the inventory search. Williams claims that the search of his person that revealed the methamphetamine was not a proper inventory search of his person pursuant to his

7

confinement under *State v. Friend*, 711 S.W.2d 508 (Mo. banc 1986). First, Williams acknowledges that this claim was not preserved for appellate review. While Williams filed a motion to suppress the methamphetamine, he affirmatively stated that he had no objection to the admission of Exhibit 3 at his trial, and, moreover, the basis for his objection to the search on appeal is different than the basis for his objection even in his motion to suppress. However, Williams asks this Court to review his claim for plain error.

Because Williams affirmatively stated at trial that he had no objection to the admission of Exhibit 3, he waived any review of this claim. "[I]f a defendant not only fails to object but also states 'no objection' or stipulates to the admission of otherwise objectionable evidence, the defendant affirmatively waives any error in its admission, plain or otherwise." *State v. Taylor*, 636 S.W.3d 630, 635 (Mo. App. S.D. 2021). Although Williams was representing himself at his trial, "[p]ro se litigants are held to the same standard as attorneys[.]" *State v. Chambers*, 481 S.W.3d 1, 7 n.4 (Mo. banc 2016). However, in the interest of assuring Williams he did not lose an otherwise meritorious point on a technicality, we review this issue *ex gratia.*

Rule 30.20[4] allows this Court, in its discretion, to review "plain errors affecting substantial rights" if we find that "manifest injustice or miscarriage of justice has resulted therefrom." We find no error, plain or otherwise, that would warrant a reversal of Williams's conviction.

---

[4] All Rule references are to the Missouri Supreme Court Rules, 2023, unless otherwise noted.

Williams acknowledges that inventory searches of a person detained civilly under section 67.315 are proper under the Fourth Amendment just as they would be of a criminally arrested person who was to be jailed. *See Friend*, 711 S.W.2d at 510. "The inventory search of an arrested individual and his effects does not violate the Fourth Amendment." *Id.*

> There are a number of governmental interests that support the inventory process. These grounds include the need to safeguard the facility by preventing the introduction therein of objects which could be used to harm other prisoners or the detainee himself; protection of the police from danger; protection of detainee's property while it remains in police custody; protection of police against false claims and disputes over lost or stolen property; and to ascertain or verify the identity of the person being incarcerated.

*Id.* "The policy considerations which justify routine jailhouse searches are equally applicable when a person is brought into the jail for detoxification." *Id.* Discovery and confiscation of "dangerous instrumentalities, including belts, knives, *drugs*, razor blades, and weapons, with which [confined] persons could injure themselves or others" has also been found to be legitimate justification for an inventory search. *Shelton v. State*, 871 S.W.2d 598, 599 (Mo. App. E.D. 1994) (citing *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983)).

The officers in this case did just such a search of Williams. They had determined that they were going to take him into protective custody for detoxification under section 67.315, after first taking him to the hospital for examination. He was placed in the police car for transportation to the hospital and later to the jail. Therefore, the officers were justified in performing an inventory search of him to look for drugs, weapons, or

9

dangerous instrumentalities.  These are precisely the objects that were confiscated from him:  drugs, a needle, and brass knuckles.  While Williams claims that the officers were merely rummaging looking for evidence of crimes, "any suspicion [by an officer] of contraband will not invalidate the search."  *Shelton*, 871 S.W.2d at 599.  Officer 1 testified that the search of Williams was an inventory search pursuant to his confinement, and Officer 2, on cross-examination by Williams when asked why he hadn't immediately been arrested for the drugs found during the search, responded, "At that time, I was concerned more of your wellbeing."  Williams then asked, "What made you search me?"  Officer 2 responded, "It was incident to the detainment for the protective custody."  Because the decision to detain Williams civilly for his intoxication had been made, and the search was a proper inventory search[5] incident to the confinement, there is no error, plain or otherwise, in the trial court's admission of Exhibit 3, the methamphetamine found in the search.  No manifest injustice or miscarriage of justice has been shown such that Williams's conviction should be reversed.

Point II is denied.

---

[5] Williams claims that, because the money that was taken from him as part of the inventory search was not listed as part of the inventory, the inventory search was illegitimate.  We disagree.  Williams acknowledged the money was returned to him upon his release from his detention.  The simple failure to list the money on the inventory from the search certainly does not render his search manifestly unjust or a miscarriage of justice.

## Conclusion

For the above-stated reasons, the judgment of the trial court is affirmed.

_____
Gary D. Witt, Chief Judge

All concur